THE PRESIDENT, &c. of the BANK OF ROCHESTER vs. JONES.

A. being the owner of 200 barrels of flour, delivered the same to a forwarder at Rochester, and took his receipt and agreement to send the same to the defendant at Albany, to whom A. was indebted in more than the value of the flour. A. then drew a bill upon the defendant on time, which he procured the plaintiffs to discount on his delivering to them the receipt for the flour and agreeing that it should stand as their security for the bill. The flour was forwarded and the defendant received and disposed of it, but refused to accept the draft. In trover by the plaintiffs against the defendant for converting the flour; *held* that the transaction was neither a sale, mortgage or pledge of the flour to the plaintiffs, and that they could not recover.

TROVER for two hundred barrels of flour, tried at the Albany circuit in October, 1844, before PARKER, C. Judge.

One Foster owned the flour in controversy on the 15th day of July, 1843, and on that day he delivered it to one Hannaghs, a forwarder at Rochester, and took from him a receipt, stating that the flour was " to be forwarded to B. P. Jones, [the defendant] Albany, in good order, without delay, subject to forty-five cents freight." On the same, day the flour was shipped on board the boat T. B. Forsyth, S. T. Goodrich, master, and by the bill of lading, signed by Hannaghs and the master, it was consigned, and was to be delivered, to the defendant at Albany. Foster then, on the same day, drew on the defendant for $950, payable at twenty days to the order of the plaintiffs' cashier; and the plaintiffs discounted the draft, receiving at the same time from Foster the receipt which he had taken from Hannaghs, which, by the agreement between Foster and the plaintiffs, was, together with the flour mentioned in it, to be held by the latter as collateral security for the draft. The plaintiffs forwarded the draft, with the receipt attached to it, to the defendant, who refused to accept the draft, but took off and retained the receipt. The latter, however, he afterwards gave up to the plaintiffs. It appeared that the defendant was a commission merchant at Albany and the factor of Foster. Sometime before this transaction the defendant had entered into a

written engagement with Foster to accept for him to the extent of $3,50 per barrel for flour which Foster should ship to him; but it also appeared that when the flour in question was shipped the defendant was in advance for Foster under this arrangement to the amount of about $1600. The plaintiffs' cashier had notice, before the draft in question was discounted, of the arrangement between the defendant and Foster. This draft was at the rate of $4,75 a barrel on the flour shipped at that time, and flour was then worth about $5,50 per barrel. The flour came to the hands of the defendant and was disposed of by him. The defendant's counsel moved for a nonsuit on the following grounds: 1. That the transaction between Foster and the plaintiffs did not transfer to the latter any property or interest in the flour, or any lien thereon; 2. That the delivery of the flour by Foster to the forwarder, and its consignment to the defendant, vested the property in him; and 3. That there was no conversion. The judge denied the motion, and charged that the plaintiffs were entitled to recover. The defendant excepted, and a verdict was rendered according to the charge. The defendant moves for a new trial on a bill of exceptions.

*A. Taber*, for the plaintiffs.

*M. T. Reynolds*, for the defendant.

*By the Court*, BEARDSLEY, J. This being an action of trover, the plaintiffs were bound to show a complete property, general or special, in the flour, or they could not recover. (1 *Ch. Pl.* 7th Am. ed. p. 170; 2 *Saund.* 47 a, note 1; *Browne on Actions at Law*, 426; *Dillenback* v. *Jerome*, 7 *Cowen*, 294; *Hotchkiss* v. *McVickar*, 12 *John.* 403.)

Foster was the sole and absolute owner of the flour on the day when the plaintiffs' title or right, if any they had, was acquired. But on that day, and before the plaintiffs had any pretence of claim to the flour, it had been delivered by Foster to Hannaghs to be sent by him without delay to the defendant at Albany, subject to the payment of freight by him. A receip

Bank of Rochester *v.* Jones.

for the flour was given by Hannaghs, which also contained his agreement to forward it to the defendant, as has been stated; and which agreement was performed on the same day by a shipment of the flour on board a canal boat, consigned, as appears by the bill of lading, to the defendant at Albany. At this time the defendant was under an engagement with Foster to accept his drafts to a certain amount on flour shipped to the defendant, and was then largely in advance to him for moneys previously paid on such acceptances.

We need not now inquire what, as between themselves, were the respective rights of the defendant and Foster, in and to this flour, on its delivery to Hannaghs, or after it had been shipped by him to the defendant. Let it be conceded that Foster still remained absolute owner, and as such, might dispose of the flour by sale or otherwise, as he thought proper, although if deemed material the concession would hardly be made. (*Grosvenor* v. *Phillips*, 2 *Hill*, 147.) But concede the point, and it does not follow that what took place between Foster and the cashier of the plaintiffs, had the effect of transferring to them either the general or a special property in the flour.

1. There was no sale of the flour to the plaintiffs. Waiving all question as to the capacity of such a corporation as the plaintiffs to deal in the purchase and sale of flour, here was nothing which looked to such a contract between Foster and the plaintiffs. No price was agreed upon or spoken of; no purchase money was paid; nor was there any thing like a delivery, actual or symbolical, of the property. In fact, neither party contemplated a sale or purchase, for nothing like it was so much as spoken of or intimated.

2. Nor was the flour mortgaged to the plaintiffs by Foster. No mortgage or writing of any description was executed by him. All he did was to deliver the receipt of Hannaghs, the forwarder, to the plaintiffs' cashier, and to engage at the same time, by parol, that the flour should be held as security for the acceptance of the draft by the defendant. It may be admitted that the receipt was delivered and the engagement made, with a view to create such a lien upon the flour, but it does not fol

low that any property, general or special, was thereby transferred to the plaintiffs. An absolute sale was not contemplated, nor was there a conditional sale, no mortgage being executed. It will hardly be pretended that a mere parol agreement, that a cargo of flour then on its way to Albany, shall be held as security for the acceptance of a draft of nine hundred and fifty dollars, there being nothing like a change of possession or a delivery of the flour, constitutes a valid mortgage of the flour for that sum. Nothing like this was pretended on the argument, and such a position would be wholly indefensible.

3. Such a lien as was claimed in this case, may be created by a pledge of personal property, but for that, delivery of possession is indispensable. (4 *Kent*, 138, 5*th ed.*; *Story on Bailment*, 286, 287, 3*d ed.*; *Bouvier's Law Dic. Pledge*; *Cross' Law of Lien*, 71, 72; 1 *Pow. on Mort. by Rand*, *p.* 3, *and notes.*) Here the flour was not delivered to the plaintiffs, and they had none of the rights of a pledgee.

By the general law of the land, the delivery of the forwarder's receipt to the plaintiffs, (which having been performed was mere waste paper,) and the parol engagement of Foster, wrought no change in the title to the flour. That remained as it was before, in Foster or the defendant. It would be useless to inquire in which of these parties the title was vested, for the question here is as to the plaintiffs' property, not theirs.

The case of *Allen and others* v. *Williams and others*, (12 *Pick.* 297,) was cited by the counsel for the plaintiffs, but I am unable to see that it has any bearing on the question to be decided. In that case, without going into a detailed statement of the facts, the plaintiffs claimed to be consignees of certain property, under a bill of lading which made the property deliverable to the *bearer* of that instrument. The bill of lading had been transferred to the plaintiffs and was held by them. Such being the facts, the court held that their right was clear, and they succeeded in the action. I see no analogy between that case and the one at bar, nor any principle there stated which has any bearing on the point in contest here.

These plaintiffs, in my view of the case, failed to show that they had the general, or any special, property in this flour, and they should have been nonsuited on the trial.

New trial granted.