## CAMPBELL *vs.* THE ERIE RAILWAY COMPANY.

In an action to recover the price of timber and lumber sold and delivered by the plaintiff to the defendant, and which the plaintiff had previously purchased of S. & W., the defendant offered to show that the sale to the plaintiff, by S. & W. was made for the purpose of defrauding the creditors of S. & W.; that H. & F. were their creditors, at the time of such sale; and that they had duly attached, in the hands of the defendant, the money due for such timber and lumber, in an action brought against S. & W., and had recovered judgment and issued an execution against them, to the sheriff, who, in virtue thereof and of said attachment and levy, had demanded of the defendant the money so due for the timber and lumber, and the defendant had paid it over to the sheriff, in satisfaction of the judgment and execution.

Campbell *v.* Erie Railway Company.

*Held* that this evidence was properly excluded, as being immaterial, and constituting no valid defense to the action; the defendant having no standing in court which would enable it to litigate the question of fraud in the sale from S. & W. to the plaintiff. E. DARWIN SMITH, J. dissented.

ACTION to recover the price of timber and lumber, sold and delivered by the plaintiff to the defendant. On the trial, the plaintiff proved that he sold to the defendant a quantity of timber and lumber, to the amount and of the value claimed in the complaint, and that he had originally purchased it of Stevens & Co. The defendant then offered to show that the sale to the plaintiff by Stevens & Co. was void for fraud; and that Havens & Field, creditors of Stevens & Co. had duly attached, in the hands of the defendant, the money due for such timber, in an action brought by them against Stevens & Co. and had recovered judgment against them and issued execution thereon, to the sheriff, who in virtue thereof, and of said attachment and levy, had demanded of the defendant the money so due for the timber, and they had paid it over to the sheriff, in satisfaction of the judgment and execution. To this the plaintiff's counsel objected, on the ground of immateriality. The court sustained the objection, and the defendant excepted.

The jury, under the direction of the court, found a verdict for the plaintiff, for the sum of $810. The exception was ordered to be heard in the first instance at a general term; judgment, in the meantime, to be stayed. The defendant moved for a new trial, on the exception.

*Bradley & Kendall*, for the plaintiff. I. The debt due from the defendant to the plaintiff was not the subject of levy and seizure by virtue of the attachment against the property of Stevens & White. 1. The statute provides that the sheriff to whom the warrant of attachment shall be directed, shall attach the property of the debtor, and shall take into his custody all books of account, vouchers and papers relating to the property, debts and credits of such debtor. (2 *R. S.* 4.

*Code,* § 232.) And that the sheriff may proceed to collect the notes and other evidences of debt that may have been attached under the warrant of attachment. (*Code,* § 237, *sub.* 4.) The term "personal property" means and includes goods, chattels, things in action and evidences of debt. (*Code,* § 463.) The attachment can only be levied upon the property which at law belongs to the debtor, Stevens & White. The debt due from the defendant to the plaintiff constituted no part of the property of those debtors. A sale of property in fraud of the creditors of the vendor is void as to such creditors, and may be seized in hands of the fraudulent vendee, by virtue of an attachment or execution in behalf of the creditors of the vendor. But such levy can only be made upon the identical property which has been thus fraudulently, as to creditors, sold. Such levy can not be made upon the mere proceeds realized by the fraudulent vendee from the property. (*McElwain* v. *Willis,* 9 *Wend.* 569.) The rule is the same as in case of fraud on the part of the purchaser, as between him and the vendor; the latter can not, after disposition thereof, by the purchaser, at law reclaim the proceeds as his property, on the ground of fraud. Where the right to reclaim the identical property is gone, his remedy is for damages only. No action can be maintained in equity in aid of an attachment or execution, except when the levy of the attachment or execution has been effectual to create a lien. (9 *Wend.* 569.) The sheriff clearly could not maintain an action against the defendant to recover the amount of this debt due for this lumber. It follows, that although the sale of that property, when made by Stevens & White, may have been void at law as to their creditors, and although the levy of an attachment on that property while in the hands of the plaintiff may have been effectual, yet when the right to follow that property ceased, or when the creditors, as in the case of the levy of this attachment, recognize a valid sale of the property by the plaintiff to the defendant, their right at law, in respect to that property, was gone and their attach-

ment could not reach it. At law a purchaser in fraud of creditors is never deemed a trustee for the benefit of creditors. While the law always permits proceedings in such cases on the ground, only, that the sale is absolutely void, upon which no trust can be based, in equity the sale may be deemed valid for the purpose of creating a trust in behalf of the creditors. (*Bullard & Tiffany on Trusts and Trustees, p. 196.*) It is therefore very clear that the plaintiff could not, at law, be deemed a trustee in respect to the debt, so as to authorize the levy of the attachment, whatever may have been the remedy of the creditors in equity after exhausting their remedy at law. (*Garfield* v. *Hatmaker*, 15 *N. Y. Rep.* 475.) 2. It necessarily must be and is conceded by the defendant, that the sale made by the plaintiff to the defendant was a valid sale; that the debt thereby produced was a valid debt; that the debt was due to the plaintiff, and not to Stevens & White; and that Stevens & White had no claim against the defendant on account of that sale to it, or for the debt which the defendant owed for that timber and lumber. There was no manner of liability of the defendant to Stevens & White, and the defendant could not discharge the debt by payment to them. It follows that this debt was not the property of Stevens & White. They had no right, legal or equitable, thereto. The service of the attachment on the defendant could not be effectual for any purpose. Nothing was attached. 3. If the title to the timber and lumber acquired by the plaintiff prior to the sale thereof by him to the defendant were fraudulent as against the creditors of Stevens & White, that fact could in no manner make the debt the property of those persons who relieve the defendant from liability to the plaintiff. The defendant can not assert the fraud, or assume to defend for a creditor of Stevens & White. The service of the attachment on the defendant could not and did not change its relation of debtor from the plaintiff to Stevens & White, or to their creditors.

II. The defendant purchased this property of the plaintiff

and acquired a good title thereto, and incurred a liability therefor to him. The defendant therefore can not complain of, or resist, the claim made by the plaintiff for the debt. 1. If the title acquired by the plaintiff of Stevens & White was fraudulent as to the creditors of the latter, so as to enable such creditors, in a proper action in equity, to have an adjudication in their favor in that respect, that fact affords no defense for the defendant in this action. The defendant is not at liberty to insist upon such adjudication, or to act as guardian for the creditors of Stevens & White, but must stand or fall on its own rights or liability. 2. The right of the defendant to the property purchased by it, or its liability therefor, is in no manner affected or impaired by any fraud in the transaction between the plaintiff and Stevens & White, as to the creditors of the latter two. The defendant does not therefore pretend to defend on its own account. If the property had been attached in the hands of the plaintiff before sale thereof to the defendant, so as to affect the title thereof, then the defendant may have had some grounds of complaint. But that is not the position of the defendant in this action. 3. There is no injunction restraining the defendant from payment of its debt. The attachment afforded no right to the defendant to determine that the plaintiff was not entitled to the payment of the debt which the defendant owed him.

III. At all events, until adjudication of fraud as against creditors of Stevens & White, and the direction to divert the fund from the plaintiff, in an action between the proper parties, the defendant can not assume to allege such fraud — a matter in which the defendant is in no manner interested. In this action the necessary or proper parties are not before the court to present this question, or to have any determination thereon. The defendant assumes a novel position in attempting to defend. It is simply claimed on the part of the defendant that it should not pay its creditor a debt fairly contracted, because the parties of whom such creditor pur-

Campbell v. Erie Railway Company.

chased the property sold by him to the defendant, had creditors who might insist that the sale to the creditor of the defendant, although valid between the parties, was fraudulent as to those creditors of the plaintiff's vendor, notwithstanding the validity of the sale to the defendant is conceded, and although the defendant is in no manner prejudiced by that fraud. By thus volunteering in behalf of the creditors of Stevens & White, the defendant will hardly be able to benefit those creditors sufficiently to excite their gratitude. The fact (if so) that the defendant voluntarily paid to the sheriff, for Havens & Field, a sum equal to the amount due from the defendant to the plaintiff, in no manner aids the defendant in this action. The defendant very prudently required and took for protection against loss on that account the bond of indemnity. The evidence offered was therefore incompetent for any purpose.

*Sherwood & Payne*, for the defendant. The objection should have been overruled, and the evidence offered by the defendant received. If the sale from Stevens & Co. to Campbell was fraudulent and void, then the title as between Campbell or his assignees and Havens & Field, creditors of Stevens & Co. was still in Stevens & Co.; and Havens & Field might have attached the timber either before or after the sale by the plaintiff to the defendant; or they might attach the proceeds of the timber in whatever form it might be or in whosever hands it might be. (*Skinner* v. *Oettinger*, 14 *Abbott's Pr. R.* 109.) And the sheriff had the right to require the defendant to give him a statement of the amount to enable him to properly attach it. (*Code*, § 236. *Schieb* v. *Baldwin*, 13 *Abbott's Pr. R.* 469. S. C. 22 *How. Pr. R.* 278. 3 *Maule & Sel.* 562, 579. 4 *Wash. C. C.* 105, 189. 5 *Hill*, 425.) And if this debt was improperly attached, or if the sale to the plaintiff was not fraudulent, the plaintiff could maintain an action against the sheriff. (*Boscher* v. *Boullier*, 4 *Abbott's Pr.* 396.) The sheriff having

rightfully attached the debt in the hands of the defendant, he might have maintained an action against the defendant had it refused to pay over the money to him, if he could establish beyond all question that the proceeds of the timber belonged to Stevens & Co. because of the fraud in the transaction between him and Campbell. And the defendant being satisfied of the fraud, and satisfied of its liability to the sheriff if it refused to pay over to him, had the right to pay the money over as it did without suit. Now if the sheriff could have maintained an action against the defendant for refusing to pay, then the law does not require it to refuse, but will permit it to pay without suit, and will allow it to come into court and show that the payment was made to the party entitled to receive it. Suppose, instead of attaching this debt, Havens & Field had attached the timber after the sale by Campbell, and had taken it away and sold it on the execution, as they might have done if the transaction between Stevens & Co. and the plaintiff was void for fraud, and then the plaintiff had brought this action, could not the defendant have shown that Campbell had no title to the timber because of this fraud, and that it had been rightfully seized by the creditors of Stevens & Co, and taken away from the defendant. If it could not, then where would be the remedy for the defendant ; it must lose the timber and pay for it too, The fact that the proceeds of the timber was attached instead of the timber, does not in the least change the case. We may, if necessary, assume (which did appear as a fact on the trial) that the timber was converted into real estate by the defendant, so that it could not be attached. (*Bates* v. *Stanton*, 1 *Duer*, 97. *Sherman* v. *Partridge*, 11 *How. Pr. R.* 154. *Comstock* v. *Hoag*, 5 *Wend.* 600.) These cases show that the defendant might avail itself, as a defense, of the fact that the right of the creditors to the lumber and the proceeds was superior to that of the vendor of the plaintiff by the sale to him fraudulent as to the vendor's creditors. But, beyond this, the defendant had a perfect defense

in its own right. The sale to the plaintiff's vendor having been fraudulent as to the vendor's creditors, the plaintiff had not the title, as to those creditors, to sell to the defendant; hence his implied warranty of title was broken, and the defendant had been required by legal proceedings to pay the price of the property to the creditors; the case being the same as if the property itself had been seized and taken from the defendant.

The defendant does not merely set up in its defense the equities and rights of the creditors of the plaintiff; it also sets up a failure of its title derived from the plaintiff, and that it has been deprived of the property through a superior title—or which is the same thing, compelled to pay the price to those having a better title — the price representing the property. A vendee may always set up such a defense against his vendor, in an action for the price. The eviction or loss of the property, was sufficient to entitle the defendant to enforce the warranty of title by setting up the breach of it as a defense. (6 *Barb.* 165. 4 *Hill*, 646. 24 *Wend* 102.)

JOHNSON, J. The action was brought by the plaintiff to recover the price and value of a quantity of timber and lumber sold and delivered by him to the defendant. The only question in the case is whether the matters offered in evidence on the part of the defendant were material, and constituted any valid defense to the action. The offer was, in substance, to prove that the defendant had paid the amount to the sheriff to apply in satisfaction of an execution in his hands, issued upon a judgment in favor of Field & Havens, against Stevens & White, upon being indemnified by Field & Havens against the claims of the plaintiff. There is no pretense that the defendant did not purchase the property of the plaintiff, nor that it did not acquire a perfect undisputed title thereto as against all the world; nor that the plaintiff did not sell in his own right, upon the defendant's

request and promise to pay him, and not as the agent of Stevens & White. Of course paying and satifying an execution in favor of third persons against strangers to the bargain and sale of the timber could not, *prima facie*, satisfy the plaintiff's demand against the defendant. But the defendant further offered to prove that in the action of Field & Havens against Stevens & White, an attachment was issued and a copy thereof served upon the defendant by the sheriff, who claimed to have attached the debt due from the defendant to the plaintiff in the defendant's hands. And it was further proposed to prove that the plaintiff bought the property sold to the defendant, of Stevens .& White, and that the transaction between them was entered into for the purpose of defrauding the creditors of Stevens & White, and that Field & Havens were their creditors at the time the plaintiff purchased. This was all excluded, upon the ground, amongst others, that the defendant had no standing in court which would enable it to litigate the question of fraud in the sale from Stevens & White to the plaintiff, being no creditor of the plaintiff's vendors, and standing in no legal relations either with them, or their creditors Field & Havens, but simply a debtor of the plaintiff upon a bargain and sale which no person could assail as in any respect invalid.

It must be admitted, for the purpose of determining this question, that the purchase by the plaintiff was in fact fraudulent and void as respects the creditors of Stevens & White. But the defendant was not their creditor ; nor did it become, in any sense, by its purchase of the plaintiff, the debtor of Field & Havens; legally or equitably. It comes here as a simple volunteer, to litigate a question in which it has, and can have no possible interest, having first taken security against the consequences of its free encounter. The defendant has no assignment, even, of Field & Haven's judgment, and nothing to base their claim to a defense upon, other than the mere voluntary payment of the debt to the sheriff, which Stevens & White owed to Field & Havens.

Campbell *v.* Erie Railway Company.

It is impossible to maintain, successfully, the position assumed by the defendant, that by the service of the attachment, Field & Havens acquired any lien upon, or interest in, this demand due from the defendant to the plaintiff. Their action was an action at law, and the attachment could only be levied upon or attached to property or things in action which belonged to the defendant in that action. Such are the terms of the warrant of attachment. By it the sheriff is required " to attach and safely keep all the property of such defendant within his county, or so much thereof as may be sufficient to satisfy the plaintiff's demand," &c. (*Code,* § 231.) This debt was in no sense the property of the defendant in that action, legally or equitably. The purchase by the plaintiff having been void as to the creditors of his vendor, the property might, I suppose, have been attached while it remained in his hands, and enough of it sold upon the execution to have satisfied the judgment, but the residue, had any remained, the sheriff would have been bound to restore to the plaintiff. (*Waterbury* v. *Westervelt,* 9 *N. Y. Rep.* 598.)

The reason of this is that the statute only makes the sale void, in such a case, as to the creditors of the vendor, leaving it perfectly valid and effectual as between the parties. The sale being void as to creditors, the property may be seized by process of attachment or execution in a legal action in the hands of the fraudulent purchasers, at the suit of such creditors, the same as though no sale had ever been made. The rule is different in regard to real estate, especially where the purchase money is furnished by the debtor and the title taken in the name of another. There a creditor can only proceed in an equitable action after having exhausted his remedy at law. He can not, as in the case of a fraudulent transfer of personal property, seize and sell the land upon execution, or attach it in a legal action. (*McCartney* v. *Bostwick,* 31 *Barb.* 390. *Garfield* v. *Hatmaker,* 15 *N. Y. Rep.* 475. *Wood* v. *Robinson,* 22 *id.* 564.) The case of *Wait* v. *Day,*

(4 *Denio*, 439,) which held that a judgment attached as a lien, and the land might be sold on execution in favor of creditors in the hands of the fraudulent grantee, was distinctly overruled by the Court of Appeals, in *Garfield* v. *Hatmaker*, (*supra*.) In the latter case Comstock, J. says: "There is no interest, legal or equitable, in the debtor, and therefore nothing to which a judgment and execution can attach; but instead of this, a pure trust in favor of the creditor, which the statute impresses upon the legal estate in the hands of the grantee in the conveyance, and which can be enforced in equity only."

In the case before us, though the plaintiff's purchase was void as to the creditors of his vendors, and the property might have been seized and sold upon execution in their favor while in that condition, the sale by the plaintiff to the defendant was perfectly valid, and gave the defendant a clear title to the property. There was no offer to show, nor any pretense, that the defendant had any notice of the fraud which rendered void the title of the plaintiff in respect to the creditors of his vendee. Their title was therefore unimpeachable. (2 *R. S.* 137, § 5.) Stevens & White had then no interest in the property transferred, and no interest whatever in the transaction, or in the demand created by the transfer and sale, legal or equitable, and there was nothing in such demand to which, in an action at law, the claims of the creditors of Stevens & White, or any process or judgment in such action, could possibly attach. Here had been a valid sale by a fraudulent purchaser, and there was no right, legal or equitable, remaining in the original owner and debtor, which his creditors could attach. Because, if it be granted that an attachment, as a provisional remedy in an action at law, may take and attach to things which could not be seized and sold by virtue of an execution, still it must be something which belongs to the defendant in the action. It must be "the property of such defendant." If the thing attempted to be attached and held be something in which the debtor

has no interest whatever, legal or equitable, and in the nature of a resulting trust in favor of his creditors only, it is impossible to reach it, either by attachment or execution, in an action at law by a creditor against such debtor. Such a proceeding, I venture to say, was never heard of in a legal action, and its novelty at this day makes very strongly against it. By section 232 of the Code, the sheriff is to execute the warrant of attachment in all respects in the manner required of him by law in the case of attachments against absent debtors, and shall, subject to the direction of the court, or judge, collect and receive into his possession "all debts, credits and effects of the defendant." This was precisely what the sheriff was authorized and required to do, under the Revised Statutes, in the case of attachments against absconding, concealed and nonresident debtors. He was required to attach "all the real estate of such debtor, and all his personal estate, including money and bank notes, except articles exempt from execution," and to "take into his custody all books of account, vouchers and papers relating to the property, debts, credits and effects of such debtor, together with all evidences of his title to real estate." (2 *R. S.* 4, § 7.) By section 8 the sheriff was required to make an inventory of all the property so seized, and, under the direction of the officer issuing the attachment, to "collect, receive and take into his possession all debts, credits and effects of such debtor, and commence such suits and take such legal proceedings in the *name of such debtor*, as may be necessary for that purpose." By the Code, (§ 232,) the sheriff is authorized to take legal proceedings, either in his own name or in the name of the defendant, as may be necessary, to collect the demands due to the defendant and get full possession and control of his effects. The two proceedings are analogous in all respects, and the design was to enable a creditor, by a proceeding at law, to seize and take whatever property his debtor might have belonging to to him, in whatever condition or form it might then be, for the purpose of satisfying the demand. Mere resulting trusts

in favor of creditors, in which the debtor has no interest whatever, are in no conceivable sense his property, and consequently can not be attached in an action at law against the debtor, or by an attachment against him as an absconding or non-resident debtor. The service of the attachment, therefore, upon the defendant, in the action of Field & Havens against Stevens & White, was a mere nullity, and attached to nothing. Field & Havens acquired no rights by it, nor was the defendant thereby placed under any obligation or liability to them, or absolved in any respect or degree from its liability to the plaintiff upon its promise. The defendant comes, therefore, as a mere naked volunteer, to litigate matters in which it has no concern, having no set-off or counter-claim against the plaintiff, and standing in no legal privity either with Field & Havens or with Stevens & White.

If Field & Havens, as creditors of Stevens & White, had any claim against any one, other than their debtors, it was against the plaintiff as their trustee of a resulting trust. The statute does not create this trust, as it does in the case of real estate, where the consideration is paid by the debtor and the conveyance taken by another, (1 *R. S.* 747, § 57 ;) but it is the mere creature of equity, which will be raised in favor of creditors of the debtor, merely, to prevent them from being defrauded of their just claims upon their debtor's property. This equity will do in all cases where the conveyance is not absolutely void, so as to vest no title in the purchaser. Where the fraudulent purchaser takes a title good as against the grantor, equity will fasten a trust upon it, in favor of the grantor's creditors, in his hands, and make him trustee for them, to the extent and value of such property. (*Law of Trusts and Trustees*, 96.) This is not a trust in favor of the vendor of the property, and debtor, in any respect, but merely in favor of his creditors, who are alone the beneficiaries. But a *bona fide* purchaser, either from the fraudulent vendor or the fraudulent vendee, is in no sense such trustee. The sale being legal, and in all respects valid as

to him, equity can fasten no trust upon it in favor of any one. The defendant, therefore, was no trustee for Field & Havens, and they not being *cestuis que trust* of the defendant, had no legal or equitable ground on which they could have proceeded, even in equity, to recover this fund from it. The plaintiff was in equity their trustee, at all events while he had the property in his hands thus fraudulently purchased, and I am inclined to think that he would be of the avails, also, in his hands, which in equity would stand as the property. But to reach such avails in his hands they must unquestionably proceed in equity against him, upon the plainest principles. If he had the property in specie, they might seize it and sell it upon execution; but if he had parted with it to a *bona fide* purchaser, the resulting trust in their favor might fasten upon the avails, to be reached in an action in equity only. In such action they might have compelled him to assign his claim for the value of the property, against the defendant, and in case he was insolvent they might in such a proceeding in equity have joined the defendant for the purpose of enjoining it from paying to the plaintiff. But the plaintiff alone, in such a case, would be their trustee, and the trust be fastened upon the chose in action in his hands. It will thus be seen that there is no ground upon which Field & Havens could proceed, even in equity, directly against the defendant to charge it with the fund in their behalf, or to make it accountable to them for it. This has never been done against a *bona fide* purchaser, purchasing without notice of the intended fraud of his vendor, except in the single case of such a purchase made for a grossly inadequate price, from an insolvent vendor who sold at such inadequate price with intent to defraud his crditors. In such a case equity fastens a trust upon the property purchased, in the hands of the purchaser without notice of the fraudulent design, to the extent of the fair value of the property, over and above the consideration paid, in favor of the creditors of the insolvent vendor. (*Boyd* v. *Dunlap,* 1 *John. Ch.* 478. *Bigelow* v.

*Ayrault, ante, p.* 143.) But this is no such case. The defendant, for aught that appears, and as the presumption is, paid or agreed to pay the full value of the property. It had therefore no ground to stand upon in this action, upon which it could litigate the question presented by it. To have allowed it would have been to introduce a practice altogether new and unheard of, and tended to introduce uncertainty and confusion in regard to legal and equitable rights and remedies. The idea suggested in behalf of the defendant, that the plaintiff may be treated as the agent of Stevens & White in selling the property to the defendant, finds no countenance in the case, whatever. The relation of principal and agent is purely a conventional relation, founded in agreement, express or implied, and the question was not raised by the defendant in any offer made by him. Equity creates no such relation when none exists by compact. It creates trustees and raises trusts, in furtherance of justice, but not agents or agencies. The whole case proceeded upon the theory that the plaintiff, in the sale to the defendant, acted for himself and in his own behalf, and not for another. If he stood in any legal relation to the creditors of his vendor, it was that of their trustee in equity of the resulting trust.

I am of opinion, therefore, that the defense offered was properly excluded, and that a new trial should be denied.

WELLES, J. concurred.

E. DARWIN SMITH, J. (dissenting.) The defense, as presented in the defendant's answer and in the proof offered in support of it at the circuit, having been overruled by the circuit judge, the question presented is, whether if the defendant had fully proved what he proposed and offered to do, it would have constituted any defense in the action. It must therefore be assumed that Stevens & Co. were the original owners of the timber in question; that they sold it to the plaintiff; and that such sale was fraudulent as against

Campbell *v.* Erie Railway Company.

their creditors. The defendant must, I think, by its offer be deemed to have proposed and offered to prove, in effect, that the plaintiff was a *particeps criminis* in the fraudulent purpose of Stevens & Co. to hinder and defraud their creditors, and was merely an agent or tool of theirs, used to conceal and cover up their property and consummate such fraud. The sale, in this view of it, while it would be valid as between Stevens & Co. and the plaintiff, would be *void* as to their creditors, and no title could be acquired through it as against such creditors, except by a *bona fide* purchaser. The title having thus passed, as between them, from Stevens & Co. to the plaintiff, he could undoubtedly give a good title to it to the defendant, and it doubtless would have acquired a valid title to the timber if it had paid the purchase money therefor to the plaintiff before notice of the fraud. But the sale being fraudulent as against the creditors of Stevens & Co., such creditors could doubtless have followed the property as far as they could trace and identify it, and if it had been found in the defendant's hands in specie it could have been claimed and seized by the attaching creditors as the property of Stevens & Co. The plaintiff would, in the eye of the law, in this aspect of the question, have been regarded as the mere fraudulent agent or conduit through which the title passed from Stevens & Co. to the defendant. No doubt, I think, could have existed on this point, if the property had been found undisposed of and unconverted in the hands of the defendant, by the sheriff, upon the execution of the attachment. The defendant unquestionably acquired the title to this timber, but as it had not paid the purchase money therefor, it was a mere defeasible title, and it could not have held the proprety as against the creditors of Stevens & Co. It owed the plaintiff the price of the timber. This debt, I think, must be deemed a substitute in its hands for the timber, and liable to be attached, to the same effect as if it had been the timber in specie, itself, at the time of the service of the attachment.

I think the rule well established, and a sound one, that when property has been feloniously, tortiously or fraudulently obtained, whenever the owner or creditor is entitled to reclaim, seize or attach the property itself, if found and identified, the products of or the proceeds or substitute for, the orignal property or thing still follow the nature of the property or thing itself; and this right to take it as a substitute for such thing remains as long as the property can be traced, and only ceases when the subject is turned into money and mixed and confounded in the general view of the same description of property, or its identity destroyed. (*Taylor* v. *Walsh,* 1 *Maule & Sel.* 562.    *Scott* v. *Luman, Willes,* 400.    *Whit-comb* v. *Jacob, Salk.* 160.    1 *Atkins,* 173.    3 *Burr.* 1369. *Copeland* v. *Collant,* 1 *P. Wms.* 320.    *Vial* v. *Michalet,* 4 *Wash. C. R.* 105. · 6 *Hill,* 425.)

The money owing by the defendant for this timber would be clearly considered in equity as a substitute for the timber, and as a debt due to Stevens & Co. and would be held upon a creditor's bill against them and the plaintiff as equitable property, or applied in payment of their debts.    And I can see no reason why a lien was not created upon it, and why it was not bound by the attachment, upon the service thereof in the suits of Havens & Field v. Stevens & Co.    Upon an attachment under the Code the sheriff is required to attach and safely keep all the property of the defendant, in his county.    He is to receive and take into his possession all debts, credits and effects of the defendant.    The attachment reaches all kinds of property, whether legal or equitable, and I can not see why it does not reach all equitable property as such, as a creditor's bill or other proceeding to reach the equitable property of a judgment debtor upon supplemental proceedings after execution returned unsatisfied.    Treating the plaintiff as a mere agent of Stevens & Co. to sell their property, and he is nothing more, if the sale to him was fraudulent, the debt created on the sale by the plaintiff to

Campbell *v.* Erie Railway Company.

the defendant, of such timber, is, in equity at least, and I think at law, also, a *debt* to his principals, Stevens & Co., and was as such, properly seized and levied upon under the attachment.

The only question which remains is, whether the defendant, having purchased the timber of the plaintiff and contracted to pay him therefor, can voluntarily pass by him and pay the price to the creditors of Stevens & Co. upon the assumption that the plaintiff's title was fraudulent, and that such creditors were legally entitled to the proceeds or price of such timber. The relation between the plaintiff and the defendant is that of debtor and creditor. It is like the relation between bailor and bailee.

The defendant is primarily bound to pay the plaintiff for the property which it has purchased of and received from him. The attachment served upon it did not change this relation, or its rights or duties. It was, as between them, like a notice, or at most like an injunction, forbidding it to pay the debt to the plaintiff. It could not, after service of the attachment, have paid the plaintiff, except at the peril of having to pay the debt a second time to the creditors, pending the attachment suit. The service of the attachment, while—if the sale from Stevens & Co. to the plaintiff was fraudulent—it created a lien upon this debt, yet did not confer upon the defendant the right to assume that such was its legal effect, or that the plaintiff was not at the time of the sale the legal owner of the timber and had the power to give, and had conveyed to it, a valid legal title to said property. But although this is, primarily *prima facie* so, it is not conclusive upon the rights of the defendant. If it was satisfied that the plaintiff had no valid title to the timber in question ; that he obtained possession of it by fraud ; that he was the mere agent or tool of Stevens & Co. to help them conceal and cover up the property, and keep it from their creditors, and that the attaching creditors had the valid legal title to such property, I think it might at its own risk and

peril recognize such title, and pay the debt to the sheriff, or to the attaching creditor. Of course, the attachment proceedings are no justification for such a course, and do not of themselves, by any legal force pertaining to them, afford the slightest defense to the defendant for making such payment. But the defendant might assume that they were valid, and take upon itself the burden of proving such validity and the rightfulness of the title of such creditors to the timber in question, and its substitute, the debt incurred therefor and still subsisting. And I think it was in this view entitled to give the proof offered for that purpose.

This rule, I think, is established by the following cases: *King* v. *Richards,* (1 *Wheat.* 418;) *Hardman* v. *Willoch,* (9 *Bing.* 378;) *Bates* v. *Stanton,* (1 *Duer,* 45.)

In principle, I think the rule precisely the same as between bailor and bailee. In *King* v. *Richards,* (*supra,*) Judge Kennedy says: "It would be repugnant to every principle of honesty to say that, after the right owner had demanded the goods of the bailee, the latter shall not be permitted, in an action by the bailor against him, to defend against his claim by showing clearly and conclusively that the plaintiff acquired the possession of the goods either fraudulently, tortiously or feloniously, without having obtained any right thereto." The same view is taken, in substance, by Judge Duer, in *Bates* v. *Stanton,* (*supra.*) In all cases, I think, where a man finds himself in possession of personal property to which there are several claimants, he may determine at his peril which is the true and rightful owner of such property, and may deliver the same to him, or he may pay the price of such property to the claimant, as the defendant did in this case. The peril he runs in such case is that he takes the burden upon himself, if sued by any other claimants of such property, of establishing the fact that he delivered the same, or paid the purchase money therefor, to the lawful owner thereof; and proof of such fact will constitute a complete defense to any such action against him. In accordance with this view, I

think, the defendant was entitled to give in evidence the facts it offered to prove at the trial, and that such proof was erroneously overruled. There should, therefore, be a new trial, with costs to abide the event,

New trial denied.

[MONROE GENERAL TERM, September 3, 1866. *Welles, E. D. Smith* and *Johnson,* Justices.]