## FLINT & BOOTH *vs.* CRAIG.

It is not every alteration that will destroy an instrument. In order to produce that effect, the alteration must be material.

The general rule is that any alteration which in any event may alter the promissor's liability is material, and vitiating, if made without his consent at the time, or approval afterwards; otherwise not.

Where a note is given payable "to the order of" certain persons named, and after its delivery by the makers, the holders, without the knowledge or consent of the makers, erase the words "to the order of," and insert the words "or bearer," this is an alteration which does not change or affect the liability of the makers; and unless it can be seen that their liability may possibly be affected prejudicially, by the alteration, it does not vitiate and destroy the note; *it seems*.

Even assuming that such an alteration was in fact made, and is material, still it is not necessarily a forgery; that depending upon the intention with which the alteration was made. A fraudulent or felonious intention is not to be presumed, but is to be proved.

Although an alteration, in a promissory note, be material, so that the makers might, if they should so elect, avoid payment, upon the ground of the unauthorized alteration, yet as they might, upon inquiring into the facts and circumstances, ratify the alteration, and thus render the note perfectly valid; or consent to pay it without regard to such alteration; and as it would be but just that they should do so, the law will infer that they would.

But this is a question which concerns the makers, alone. A third person who is not a party to the note, nor in privity with any one who is a party, has no interest in the question, nor right to assume that the makers will refuse to pay, on account of the alteration.

A person to whom a promissory note, made by another, has been turned out, by the holders, as collateral security for the payment of a loan, and who, on demand of the note, after payment of the loan, refuses to redeliver it, cannot, in an action by such holders, to recover for the wrongful conversion of the note, set up the defense that a material alteration. has been made, in it, since it was executed; either as a bar to the action, or to mitigate the damages.

The whole matter and subject of the alteration of the note is, as between the parties to such action, wholly irrelevant and immaterial, for any purpose.

The defendant is to be deemed and taken as having no interest in the note, any more than one would have who had obtained possession of the property of another, by any tort or larceny. He is neither lawful owner nor lawful holder. His possession is without right, and by means tortious, and through a breach of trust.

No person is allowed to defend an action upon a question which does not concern him, and in which he has no lawful interest.

MOTION for a new trial, upon exceptions taken at the circuit.

The complaint alleged that on the 10th day of December, 1860, the plaintiffs were partners in business, under the name of J. L. Booth & Co. ; that on said 10th day of December, 1860, the firms of Bradley & Norton and Hart & Glass, at Racine, in the State of Wisconsin, made their promissory note in writing, dated that day, whereby, for value received, they promised to pay to said plaintiffs, by their firm name of J. L. Booth & Co., or bearer, two years after date, at Racine County Bank, $1500, with interest at seven per cent the first year, and interest at ten per cent the second year, and then and there delivered the same to the plaintiffs; that interest at the rate of ten per cent by agreement of the parties was lawful and authorized by statute in the State of Wisconsin, where said note was given, and was by the terms thereof payable; that afterwards, and on or about the 7th day of February, 1862, the defendant advanced to the plaintiffs about the sum of $500, and thereupon the plaintiffs delivered to said defendant the aforesaid promissory note to be, by said defendant, collected to reimburse himself for such advance, and to pay over to the plaintiffs the balance of the proceeds of said note, or as security for the money so advanced by said defendant to the plaintiffs.

The plaintiffs further alleged, that they had repaid to the defendant the money so advanced by him to them upon the said note, and the whole thereof, and that said defendant has no interest in or lien upon the said note, but that he still retains the same in his possession, and the same remains wholly unpaid.

And the plaintiffs further alleged that after they had repaid to said defendant the money so advanced by him to them, they demanded of him the said promissory note, but the defendant refused, and still does refuse, to deliver the said promissory note to the plaintiffs, but on the

contrary thereof, had converted the same to his own use, whereby the plaintiffs had sustained damages to the amount of $2000. Whereupon the plaintiffs demanded judgment against the defendant for the sum of $1500, with interest thereon from the 10th day of December, 1860, for one year, at seven per cent, and at ten per cent after the first year, besides costs.

The defendant, by his answer, admitted the partnership of the plaintiffs, and that the rate of interest in the complaint specified was lawful at the time and place, when and where, the instrument purported to have been made, but he denied each and every other allegation in said complaint contained.

And the defendant alleged and insisted that the paper writing called in said complaint a promissory note, and in said complaint described, was, at the time it was delivered to him, invalid and of no effect or value, for the reason that after the execution of said paper by said Bradley & Norton and said Hart & Glass, and after its delivery to the plaintiffs herein, it was, without the consent of said Bradley & Norton or said Hart & Glass, or either of them, altered in a material part by striking out of said paper writing the words, " the order of," and inserting the words " or bearer,"

And for a second, and further and separate answer, the defendant admitting the truth of the allegations in said complaint, as are in the above defense admitted, and denying the others, as above stated, further alleged, that after the delivery of said note to said J. L. Booth & Co., as in said complaint stated, they, the said J. L. Booth & Co., for a valuable consideration to them paid, duly sold, assigned and transferred to the said Charles L. Flint the said note, before the maturity thereof, and the said Flint did thereafter, for the sum of $500 to him paid, sell, assign, indorse and deliver said note to the defendant, who thereby became, and has since continued to be, the sole owner and

holder of said note. That upon the maturity of said note, the same was not paid, and the said Charles L. Flint was duly charged and made liable as indorser thereon; and soon thereafter, and on or about the 23d day of February, 1863, the defendant commenced an action in this court against Flint, upon said note and. indorsements; that Flint appeared in said action, and as a defense thereto, set up, in substance, the same matters that are set forth and alleged in the complaint herein, except that the said Flint then claimed to be the only person interested in, or owning said note, and especially that this defendant had no interest, right or title to said note, except for the purposes of collecting the same of the makers thereof for this defendant's benefit, to the extent of $500, and interest, and to collect the balance, and pay over the same to the said Flint. That on or about the 13th day of October, 1864, the issues in said action were duly brought to trial at a circuit term of this court, held in and for Monroe county, and such proceedings were had, that on the 14th day of October, 1864, this defendant recovered judgment in said action against said Flint for the sum of $593.85 damages, and $111.65 costs. That in and by said judgment, it was, among other things, adjudged and determined, that the said note, prior to its indorsement and delivery to this defendant, belonged to the said Flint, and that it was duly, and for value, sold, assigned and delivered by said Flint to this defendant, who thereby became the owner thereof; and further, that the facts set up in the answer of said Flint therein as a defense to this defendant's action are the same matters which are now set up in the complaint herein, as and for a cause of action against this defendant.

And for a third defense, the defendant, after admitting the truth of such of the averments in the complaint as were in his first defense admitted, denied each and every of the other averments in said complaint contained; and further alleged that previous to the maturity of the said

note, and before the commencement of this action, the said Booth sold, assigned and transferred to the said Flint, for a valuable consideration to him paid, all his, the said Booth's interest in said note, and Flint thereupon became sole owner thereof, and that Booth had not, nor did he have at the commencement of this action, any interest in the same.

The action came on to be tried at a circuit court held in and for the county of Monroe, in October, 1870, before Justice J. C. Smith and a jury, when the plaintiffs, to maintain the issue on their part, gave evidence tending to show that on and prior to the 7th day of February, 1862, the plaintiffs were the owners of the promissory note mentioned and described in the complaint, and that the same was duly executed by the makers thereof; and that on the day last aforesaid, the plaintiff Charles L. Flint, deposited said note with the defendant as collateral security for the repayment of the sum of $500 then borrowed by him of said defendant; that afterwards, and before the demand hereinafter mentioned, was made, Flint repaid to the defendant the said sum of $500, and all interest thereon; that afterwards and before the commencement of this action, the plaintiffs demanded of the defendant that he deliver up and surrender said note to the plaintiffs, but that the defendant refused so to do. The plaintiffs then rested their case.

The defendant thereupon, to maintain the issue on his part, gave evidence tending to prove that the said note was not deposited with him as such collateral security, but that the same was purchased by him of the plaintiffs absolutely; also evidence tending to prove that when the note in the complaint set forth was made and executed by Hart & Glass, and Bradley & Norton, and delivered by them to the plaintiffs, it was payable by its terms to the order of J. L. Booth & Co.; that after its execution and delivery as aforesaid, it was, by the plaintiffs, and without the consent

of said Bradley & Norton or Hart & Glass, or either of them, altered by striking out of said note the words, "the order of," and inserting the words, "or bearer."

The plaintiff then gave evidence tending to prove that no such alteration of the note had taken place, but that the same was in all respects in its present condition when executed by the makers thereof.

The evidence was then closed, and the case was submitted to the jury. The judge, in his charge to the jury, instructed them, among other things, as follows: That if the said promissory note was, after the execution and delivery thereof to the plaintiffs, altered in the respects claimed by the defendant, by the plaintiffs, or either of them, or by the procurement, or with the assent of them, or either of them, without the knowledge or assent of the makers thereof, then the plaintiffs in this action could not recover, and they should render their verdict for the defendant; to which ruling and instruction of the court, the counsel for the plaintiffs excepted. The jury, after deliberation, rendered their verdict for the defendant. The court thereupon ordered a stay of proceedings to enable the plaintiffs to move for a new trial at the general term, in the first instance.

*W. F. Cogswell,* for the plaintiffs.

I. The court erred in instructing the jury that if the note was altered in the respect stated in the bill of exceptions, the plaintiffs were not entitled to recover.

The right to maintain the action of trover for the conversion of choses in action is well established. It has been held, both in England and this State, to exist in the case of the plaintiffs' own paper, when the wrongdoer has parted with the same to a *bona fide* purchaser, so as to give such purchaser a right of action against the plaintiff. (*Decker* v. *Mathews,* 12 *N. Y.* 313, *and cases cited.*) In such action the measure of damages is *prima facie* the amount

due on the security. (*Sedg. on Dam. 4th ed.* 569, *and cases cited.*) In enunciating this general rule the judges of the courts have sometimes remarked that the defendant might reduce such damages by showing payment, insolvency of the maker, or the invalidity of the security. This statement has thence been adopted into the text books. Its correctness as a general proposition, and its applicability to this case, is now before this court. Except with very decided limitations and qualifications, I deny its correctness. One peculiarity in reference to negotiable paper should be borne in mind in considering the question, and that is, that a wrongdoer may transfer a good title to a bona fide purchaser, even as against the real owner. Take then the second branch of the proposition: A person comes wrongfully into possession of a negotiable note or bill of exchange, and has it discounted at a bank, the owner sues, and when the trial comes on, the maker or drawer is or claims to be insolvent. The defendant gives evidence of such fact, and defeats the plaintiff's recovery, or reduces the damages to a merely nominal amount. On what principle does the defendant deprive the plaintiff of the chance of the maker's acquisition of property? Is such a thing so strange in our country as to be ignored by the courts. But suppose the plaintiff is prepared to show that the maker, although nothing can be collected of him upon execution, has fraudulently disposed of property; is the court to sit and try that question in such an action? The wrongdoer certainly should not be the subject of especial leniency on the part of the court. Or, take the case before this court; the defendant says that after this note was delivered to the plaintiffs, it was changed so as to make it negotiable by delivery instead of by indorsement; what right has he to urge that? That (assuming it to have been a material alteration) would have constituted a good defense to the makers on the note, but how can the defendant urge that objection; what business is it to him?

Shall he be allowed to interpose a defense for them which they would not? Perhaps they have already, with full knowledge of the alteration, assented to the same, or perhaps they would have done so had the plaintiffs presented the note. Shall the defendant deprive the plaintiffs of their right to seek to enforce the note, and if they could not do that, to recover on the original consideration, which they might perhaps do on surrendering the note? I submit, there can be but one answer to these questions. It should be observed that the defendant has made no attempt to collect this note. The case of *Goggerley* v. *Cuthbert,* (5 *Bos. & Pul.* 170,) will be found to be in point, as I think.

II. The alteration was not a material one. It did not affect or change, in any degree, the character of the note, or enlarge or modify the obligation of the makers. (*Foote* v. *Bragg,* 5 *Blackf.* 363. *Farquhar* v. *Southey, Moody & Malkin,* 14.)

*Geo. F. Danforth,* for the defendant.

I. The exception to the charge was not well taken. 1. In this action the measure of damages is *prima facie* the amount due on the note, but the defendant was at liberty to reduce that valuation by showing any fact tending to invalidate the note. (*Sedg. on Dam.* 488. *Potter* v. *Merchants' Bank,* 28 *N. Y.* 642. *Allen* v. *Suydam,* 20 *Wend.* 335. *Ingalls* v. *Lord,* 1 *Cowen,* 240.) As payment of the note or release of the makers from liability; (*Barmon* v. *Lithauer,* 4 *Keyes,* 317;) or insolvency of the makers; (*Potter* v. *Merchants' Bank,* 28 *N. Y.* 642; *Gellatly* v. *Lowery,* 6 *Bosw.* 113;) or that it was drawn without authority; (*Matthews* v. *Sherwell,* 2 *Taunt.* 430.) And, with much greater reason, that the makers of the note have been discharged from liability and the note itself rendered void, and, of course, valueless. An insolvent man might acquire property; but a note rendered invalid cannot be

Flint *v.* Craig.

the foundation of an action or ground of recovery. 2. The alteration in this case rendered the note void. It is a material alteration. A note payable to a particular person, or to such person as he may appoint, is very different from one payable to anybody. The maker agrees in the one case to pay a certain person named, or such other as he may appoint. No one can so change the contract as to render him liable to pay under any other circumstances. The alteration in question does that, and so changes the liability. The note was perfect when delivered, and any change in any of its terms was material. 3. The defendant can avail himself of the objection. The action is trover, not replevin. And the only question is as to the value of the note. This having been altered in a material part, without the consent of the makers, was rendered void and without value; and is a defense, upon the same principle which permits a sheriff sued for an escape to show that the judgment or execution was void. (*Cornell* v. *Barnes*, 7 *Hill*, 35. *Phelps* v. *Barton*, 13 *Wend.* 68. *Carpentier* v. *Willet*, 6 *Bosw.* 35.)

II. A new trial should be denied, and judgment ordered upon the verdict, for the defendant.

*By the Court*, JOHNSON, J. The case presents but a single point, which arises on exception to the charge of the judge to the jury. The action was for the wrongful conversion, by the defendant, of a certain promissory note, made by the two firms of "Bradley & Norton," and "Hart & Glass," for $1500, payable to the plaintiffs, *or bearer*, as alleged in the complaint. The plaintiffs claimed, and gave evidence tending to prove, that they turned out this note to the defendant as collateral security for the payment of $500 borrowed by them of the defendant. The $500 was paid and the note demanded of the defendant, who refused to deliver it, claiming that he had purchased it of the plaintiffs. Evidence was given by the defendant

tending to prove that the note was purchased by him, absolutely, of the plaintiffs. The defendant also gave evidence tending to prove that the note, when made and delivered by the makers to the plaintiffs, was payable "to the order of" the plaintiffs, and that after its delivery by the makers, the plaintiffs, without the knowledge or consent of the makers, or either of them, erased the words "the order of" and inserted the words "or bearer." The plaintiffs gave evidence tending to prove that the note was, at the time of the trial, in all respects as it was when delivered to them by the makers, and that no alteration had been made by them. The judge charged that if the note, after the execution and delivery to the plaintiffs, had been altered by them, in the respect claimed, without the knowledge or assent of the makers, the plaintiffs could not recover, and their verdict should be for the defendant. The jury found for the defendant, and the plaintiffs move for a new trial on their exception to this portion of the charge. If the charge was erroneous, the plaintiffs have the right to assume that but for the erroneous charge they would have succeeded in obtaining a verdict in their favor; and the case is to be examined in that aspect. The exception properly raises two questions: 1. Whether the alteration, if made, as claimed by the defendant, vitiates the note entirely, and renders it void and worthless; and, 2. Whether the defendant can set up this defense against the plaintiffs in this action, either as a bar to the action, or on the question of damages.

No case has been cited, and from my examination I am confident that none can be found, either in this country or in England, upon the precise point of an alteration like this, assuming it to have been made as claimed. And whether it would avoid the note, so that no action could be maintained upon it, against the makers, must depend upon the general principles established by the numerous

decisions in respect to the alteration of such instruments, after delivery, without the maker's consent.

It is not every alteration that will destroy an instrument. In order to produce that effect the alteration must be material.

It has been held, very properly, that the insertion of the words "bearer" or "order" in a note, after delivery, which were not there before, was a material alteration, which would render the note void, because it changed the nature and character of the instrument, and might deprive the maker of his right of set-off against the payee. (*Bruce* v. *Westcott*, 3 *Barb.* 374, *and cases there cited.*) But an alteration or addition to supply, or declare the intention of the parties, will not have that effect. Thus a *bona fide* holder of a bill accepted, payable to ——— or order, may insert his own name as payee, without rendering the bill void.

So a mistake may be corrected, and words inserted which express what the law implies. (*Atwood* v. *Griffin*, 2 *C. & P.* 368; 12 *E. C. L.* 176. *Chitty on Bills*, 206, 207, *ed. of* 1836. 2 *Pars. on Notes and Bills*, 562, 563.) The general rule deducible from all the authorities seems to be, that any alteration which, in any event, may alter the promissor's liability, is material and vitiating, if made without his consent at the time, or approval afterward; otherwise not. (2 *Pars. on Notes and Bills*, 564.) This is certainly a reasonable and sufficient test, and I think may be safely laid down as the true one. Tried by this test it is certainly difficult to see how the promissors in the note in question could by any possibility be injured, or their liability be affected by this alteration. They are both words which import negotiability, and without which, or some equivalent term, an instrument would not possess that quality. No one, I suppose, would contend that where a note was given payable to "bearer," the erasure of that word and the insertion in its place of the word

holder, without the maker's consent, would vitiate it. They are equivalent terms, in such instruments, and have in law precisely the same meaning. And so the word " order" confers upon the instrument the same quality. It imports and expresses negotiability, the same as either of the other terms, and is in law a contract with any lawful holder. The only difference is in the form of the transfer to third persons so as to give them a good title. But this form or manner of negotiating the instrument by the payee does not, as I conceive, affect in any manner or degree the interests or liability of the promissor. After the payee has indorsed such a note in blank, it passes from hand to hand by delivery, the same as though it was originally payable in terms to bearer. And he may avoid all personal liability by adding " without recourse to me," to his signature.

In that condition it is a note payable to bearer, to all intents and purposes. And unless it can be seen that the liability of the makers may possibly be affected prejudicially, by the alteration, it does not vitiate and destroy the note. The intention of the promissors to have it a negotiable instrument has not been frustrated, or in any degree affected by the alteration.

But in the view I have taken of this case, it is unnecessary to decide the question above considered. It may be assumed, for the purposes of this point, that the alteration was in fact made as alleged, and is material; still it is not necessarily a forgery. That depends upon the intention with which the alteration was made. Unless it was made with a fraudulent or felonious intent, it does not constitute a forgery. Such fraudulent or felonious intention is not to be presumed, but is to be proved, and this was not done, nor was any such question raised or passed upon by the jury. As the case stood upon the trial, it was simply the case of a note altered, without the consent of the makers, in a manner deemed to be material. But the

Flint *v.* Craig.

promissors had not been called upon to pay it; and for aught that appears, or that could properly be made to appear, in such a case, stood ready and willing to pay it, to any lawful owner and holder. It is to be presumed that the debt represented by the note was a just and honest debt of the makers; and although the alteration was material, so that they might, if they should so elect, avoid payment upon the ground of the unauthorized alteration, yet they might well, upon inquiry into the facts and circumstances of the alteration, and becoming satisfied that it was made without any intention of injuring or defrauding them, or of committing a felony, ratify the alteration, and thus render the note perfectly valid, or consent to pay it, without regard to such alteration. And as it would be but just that they should do so, in such case, the law will infer that they would. But this is a question which concerns them alone, and in which no person other than a lawful owner and holder has any interest or voice whatever. The defendant certainly had no interest in this question. He was not a party to the note, nor in privity with any one who was a party. He had no right to assume that the maker would refuse to pay on account of the alteration, much less, through his own wrong, place both maker and payee and owner, in a situation, through the judgment of the court, in which they could not lawfully pay the true owner, should they be disposed to do so. In this aspect of the case, the defendant is to be deemed, and taken, as having no interest in the note, any more than a person would have who had obtained possession of the property of another by any tort or larceny. He is neither lawful owner nor lawful holder. His possession is without right, and by means tortious and through a breach of trust. Standing in this situation, it would be strange indeed if the law should be found to be, not only a shield to the defendant in his wrong doing, but a sword also in his hand, for further and more effective aggression

upon the plaintiffs' rights. Such is not the law. It is not justly subject to any such reproach. No person is allowed to defend an action upon a question which does not concern him, and in which he has no lawful interest. It does not follow, that because the makers of the note might defeat an action if brought against them, on such note, upon the ground of the alteration, the defendant can use it, either as a full defense or in mitigation of his tort.

The alteration might be material to the makers, when required to pay, but would be wholly immaterial to one who had no interest in the note, and whose possession was unlawful. This principle, which denies the right to a party to an action to defend on a question or matter in which he has no legitimate concern or interest, is fully illustrated in the cases of *Campbell* v. *Erie Railway Co.*, (46 *Barb.* 540,) and the *City Bank of New Haven* v. *Perkins*, (29 *N. Y.* 554.) The exception noticed in the case last cited applies with full force to the note in the defendant's hands, should he attempt to enforce it against the makers. Should he bring an action against them, they might defeat the action, even though the alteration had not affected the validity of the note, simply upon the ground that his possession was tortious, and that he could not by his own fraud or wrong, acquire a right of action against any one.

It is said, however, in behalf of the defendant, that this evidence of alteration, if not admissible as a strict defense or bar to the action, was competent by way of mitigating damages, and upon the value of the obligation. It was clearly put to the jury, as a defense in the nature of a bar to the action ; and in this respect the charge was clearly erroneous. But even upon the question of damages, by way of showing the value of the note, the matter was wholly inadmissible as between these parties.

As has been already said, the question of the alteration was no test of the value of the note to the payees, or to any lawful holder. *Non constat*, the makers were willing

Flint *v.* Craig.

to ratify the alteration and acknowledge their liability. They might do so, and then, confessedly, the note was worth the amount promised. And whether they would or would not, was a question which could not have been litigated upon the trial. It would have been incompetent proof, had it been offered, that the makers did not intend to pay. It would have been matter of speculative opinion merely, had the proof been offered. Even had the makers resolved and declared their intention to defend against the plaintiffs, on account of the alteration, it was of no consequence, as cooler reflection and a sense of their moral obligation might lead to a different frame of mind, and better resolutions afterwards.

My conclusion therefore is, that the whole matter and subject of the alteration of the note in question was, as between the parties to this action, wholly irrelevant and immaterial for any purpose. The makers of the note are presumed to be able to pay it; and if they are willing to do so, as they will also be presumed, as between these parties, to be, the note is, as matter of law, worth what it promises to pay; and if the defendant has no right or title, except what he gets by his tort, the measure of damages should be the amount promised, with interest. It is plain that the market value would afford no just measure of compensation, after the defendant has by his wrongful acts and conduct thrown discredit upon the note. If he persists in wrongfully withholding the note from the true owners, it should be, as an obligation of good name and credit, as when he received it from the plaintiffs, to hold as a security. And he must be required to respond upon that basis.

A new trial must therefore be granted, with costs to abide the event.

New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, May 1, 1871. *Mullin.* P. J., and *Johnson* and *Talcott,* Justices.]