JOHN C. GROAT et al., Appellants, *v.* STEPHEN B. GILE,
Respondent.

51  431
116  814
116  375
51  431
130  527

Where articles of personal property, fully identified, are sold at a desig-
nated fixed price each, the fact that the number of articles is not known
and is to be ascertained solely for the purpose of fixing the total value,
does not render the sale incomplete or prevent the title passing.

Defendant contracted to sell plaintiffs two flocks of sheep, except "two
bucks and a lame ewe," at four dollars per head; the flocks had been
examined by plaintiffs, and the ones excepted were identified. Plaintiffs
paid twenty-five dollars upon the purchase, and were to take the sheep
and pay the balance at a subsequent specified time; defendant mean-
while to pasture them. Within the time specified plaintiffs paid the bal-
ance of the purchase-money and took the sheep; but before this, defend-
ant had sheared the sheep and appropriated the wool. In an action for
the conversion,—*Held*, that the title to the sheep became vested in plaintiffs
immediately upon the completion of the contract and payment of the
twenty-five dollars, which title necessarily included the wool.

Also *held*, that the legal effect of the agreement could not be controlled
or varied by showing a custom in the county where the transaction took
place that the wool of sheep, sold under such circumstances, does not
go to the purchaser, and that evidence of such custom was incompetent;
nor was it competent to show that one of the plaintiffs, under a contract
precisely similar, had not claimed the wool, or that he had admitted
that he did not understand they had bought the wool in question.

Where the terms of a contract are undisputed, the question as to the nature,
extent and effect thereof, and of the interest of the parties thereto, is to
be determined by the contract, and is a question of law for the court.

The court instructed the jury to allow the highest market price of wool,
from the time of demand to the time of trial, with interest from the time
of demand. Defendant excepted to the charge as a whole. *Held*, that
the portion of the charge allowing the highest market price was proper,
and the exception was, therefore, too broad to present any question as
to the residue.

Whether interest as well as the highest market price is proper as damages
in an action for the conversion of personal property, *quere.*

(Argued September 27, 1872; decided January term, 1873.)

APPEAL from order of the General Term of the Supreme
Court in the third judicial district, setting aside a verdict in
favor of plaintiffs and granting a new trial.

The action was brought to recover the value of a quantity

of wool which the defendant had shorn from sheep, to which the plaintiffs claimed title.

The defendant in May, 1864, owned a lot of sheep and lambs, which the plaintiffs wished to buy. The exact number was not known. They were at the time in two different fields. The plaintiffs went to examine them, and after such examination and some negotiation with the defendant they agreed to buy the whole, except two bucks and a lame ewe, at four dollars a head. They paid twenty-five dollars on account of the purchase, and were to take the lambs in September, and the sheep in November following. The whole number bought was ninety-two sheep and seventy-one lambs. They were taken away and paid for by the plaintiffs, the lambs and a part of the sheep in July or August, and the rest of the sheep in October. Before they were so taken the defendant had sheared the sheep and converted the wool to his own use.

The judge, at the close of the testimony, held and decided that holding the contract to be as testified to by the defendant, as matter of law the title to the sheep passed to the plaintiffs immediately upon the completion of the contract and the payment of the twenty-five dollars, and that they were entitled to recover the highest market price of wool between the time of the demand thereof and the time of trial, with interest from the time of the demand, and directed the jury to render a verdict accordingly. A verdict was given in accordance with that direction. Exceptions were ordered to be heard at first instance at General Term. Other facts appear in the opinion.

*John H. Reynolds* for the appellants. The contract of sale was valid, and the title to the sheep passed to plaintiffs on the payment of the twenty-five dollars. (Chitty on Cont., 8th Am. ed., 332; *Olyphant* v. *Baker*, 5 Den., 382; *Terry* v. *Wheeler*, 25 N. Y., 524, 525; 1 Parsons on Cont., 435, 441; 1 Wait, 490.) The wool was a part of the sheep and passed with the title to the sheep. (1 Wait, 821; *Terry* v. *Wheeler*, 25 N. Y., 526.) This contract cannot be contradicted by evi-

dence of usage or custom. (*Hinton* v. *Locke*, 5 Hill, 437; *Thompson* v. *Ashton*, 14 J. R., 316; *Adams* v. *Reed*, 1 Seld., 159; *Mut. S. Ins. Co.* v. *Hone*, 2 Comst., 240, 241; *Tucker* v. *Bishop*, 16 N. Y., 402; *Wheeler* v. *Newbould*, id., 392; *Higgins* v. *Moore*, 34 id., 419; *Cooper* v. *Kane*, 19 Wend., 386.) The court correctly held that plaintiffs were entitled to recover the highest market price of the wool between the time of the demand and the trial. (*Romaine* v. *Van Allen*, 26 N. Y., 309; *Blot* v. *Boiceau*, 3 Comst., 85; *Scott* v. *Rogers*, 31 N. Y., 685.) Plaintiffs were entitled to recover interest from the time of the conversion. (*Andrews* v. *Durant*, 18 N. Y., 502; *Sears* v. *Conover*, 33 How. Pr. R., 324.)

*John Gaul, Jr.*, for the respondent. The contract was executory, and the title to the sheep did not pass to plaintiffs until the sheep were delivered and the money paid. (*Pierson* v. *Hoag*, 47 Barb., 343; *Clark* v. *Dale*, 20 id., 42, 61; *Kelly* v. *Upton*, 5 Duer, 336; *Newcome* v. *Cramer*, 9 Barb., 402; 1 Wait's L. and P., 470, 546, and cases cited; 9 M. & N., 312; 2 B. & Ald., 329; 18 J. R., 434; 6 Wend., 77; 1 Den., 591; *Joyce* v. *Adams*, 4 Seld., 291; *Russell* v. *Nicoll*, 3 Wend., 112; *Field* v. *Moore*, Hill & Denio, 418; *Ward* v. *Shaw*, 7 Wend., 404; *Rapelye* v. *Mackie*, 6 Cow., 250; *McDonald* v. *Hewett*, 15 J. R., 349; *Ward* v. *Shaw*, 7 Wend., 404; *Outwater* v. *Dodge*, 7 Cow., 85.) Parol evidence as to the custom in such sales was proper to prove what the contract was. (2 Pars. on Cont., 1st ed., 47, 55; *Smith* v. *Wilson*, 3 B. & Ad., 728, cited in note 2 Parsons on Cont., 51; *Cooper* v. *Kane*, 19 Wend., 386; 2 Sarkie's Ev., 258, 259; 1 Phillips' Ev., 420, 421; *Whitnel* v. *Gratham*, 6 Term R., 398; *Outwater* v. *Nelson*, 20 Barb., 29; *Fox* v. *Baker*, 44 id., 541; *Dawson* v. *Kittle*, 4 Hill, 107; *Goodyear* v. *Ogden*, id., 104; Cowan & Hill's Notes to Phil. Ev., 1408, 1409, 1412, 1413; *Wadsworth* v. *Alcott*, 2 Seld., 72; *Flett* v. *Merrton*, L. R. [7 Q. B.], 126; Moak's Series, 1 Eng. R., 32; *Humphrey* v. *Dale*, 7 E. & B., 266; E. B. & E., 1004; *Cuth-*

*bert* v. *Cumming*, 10 Exch., 809; S. C., affirmed, 11 id., 405; *Van Santvoord* v. *St. John*, 6 Hill, 157; *Muncey* v. *Dennis*, 1 Hurl. & Nor., 216; *Smith* v. *Dann*, 6 Hill, 543.) The court erred in holding that plaintiffs were entitled to recover the highest price of the wool between the demand and the trial, with interest from the time of the demand. (*Romaine* v. *Van Allen*, 26 N. Y., 309; *Andrews* v. *Durant*, 18 id., 496; *Kennedy* v. *Strong*, 14 J. R., 128; *Smith* v. *Griffith*, 3 Hill, 333; *Cortelyou* v. *Lansing*, 2 Caines Cas., 200.

Lott, Ch. C. As the verdict at the Circuit in favor of the plaintiffs was ordered by the judge who tried the action on the version given by the defendant of the contract or agreement between the parties, it becomes necessary to refer to it with particularity for the purpose of ascertaining whether his conclusion of law based thereon was correct.

The defendant, on his direct examination, after stating that the plaintiffs called on him about the 20th of May, 1864, and that he and the plaintiff Groat had some conversation about the purchase of his sheep and lambs, in which he said that he wanted to sell the old sheep with the lambs, and that he would ask four dollars apiece for them, testified as follows: "They concluded to go and see the sheep; I told them where they were; one flock was near a mile from the house; they went off together; went to the further lot first; when they came back from this lot I told them where the others were; I told them I did not believe they would like that lot; they did not look as well as the others, as some of them had lost their wool; then they went off to see the other lot and came back; they asked me how many sheep and lambs there were; I told them I could not tell how many there were; I did not know myself; I think I said in the neighborhood of so many sheep and so many lambs; then they inquired about taking the sheep; it was agreed that they should take the lambs the middle of September and the old sheep the first of November, and pay me four dollars apiece for sheep and lambs; this was the contract; think I told them I would give them a good

chance; something was said about cutting the lambs' tails off; I told them I thought it was not prudent; I tried to dissuade them from having it done; that they had got too large and might die; something was said in answer to it, but I don't know just what; they asked me if the sheep were sound after they had been to see them; I told them I did not consider them entirely sound; then they asked that I should doctor the sheep if they needed it; I told them I would; after the talk they handed me over twenty-five dollars to bind the bargain, as they said; then they went away." On his cross-examination he said: "When Groat and Jacobia were there in May, I had sheep in two lots; the sheep I sold them were in the lots mentioned; I sold them all that were in these lots; did not know how many sheep I had; had not counted them for some time; sometimes they die; told them I did not know how many I had; that there would be in the neighborhood of ninety old sheep; they were to take all the sheep in the two lots, except two bucks and a lame ewe; they got all the sheep in the two lots except two bucks and a lame ewe; they agreed to give four dollars per head; in the bargain they were to have all the sheep except two bucks and a lame sheep; I agreed to sell the sheep at that price; nothing was said about the wool; they got ninety-two old sheep and seventy-one lambs." And on further redirect examination he said: "When they made the contract for these sheep, there was nothing said about the wool." And also: "Some of the lambs came in March, and so along, and some were only a few days old; some time in August is the usual and proper time for taking lambs from sheep; they had not been separated from the sheep on the nineteenth of May; the lambs were in no condition to be separated from the sheep, at that time, without ruining the lambs."

The preceding statement of the defendant's evidence contains all that relates to the negotiation and making of the agreement, and fully justifies the construction given to it by the learned judge at the circuit. It is clear that the plaintiffs intended to buy of the defendant, and that it was his

intention to sell to them *all* of the sheep and lambs that
were running in the two lots of land referred to by him
(except two bucks and a lame ewe, as to the identity of
which there was no question), at four dollars per head, and
that no further or other designation or selection was contem-
plated. All the parties understood what particular sheep and
lambs were intended to be sold, and there is no doubt that
these were sufficiently identified. Indeed, that fact does not
appear to have been disputed on the trial. Under such cir-
cumstances, when the terms of the sale were agreed on and the
payment of twenty-five dollars was made to the defendant on
account of the purchase-money by the plaintiffs, their liabil-
ity became fixed for the balance, which was ascertainable by
a simple arithmetical calculation based upon a count of the
sheep and lambs and the price to be paid per head for them.
No delivery of them or other act whatever in relation to them
by the defendant was required or intended. The plaintiffs
were to *take* them without any agency in delivering them on
the part of the defendant, and they, from the time the agree-
ment was made, became the owners thereof. The defendant
subsequently kept them at the risk of the plaintiffs. Chan-
cellor KENT, in his Commentaries, vol. 2, p. 492, in stating the
rule governing sales at common law, says: "When the terms
of sale are agreed on and the bargain is struck and everything
that the seller has to do with the goods is complete, the con-
tract of sale becomes absolute as between the parties, without
actual payment or delivery, and the property and the risk of
accident to the goods vest in the buyer." This rule is modified
by our statute of frauds so far as to require, in certain cases,
that a note or memorandum of the contract shall be made in
writing and subscribed by the parties to be charged, or that
the buyer shall accept and receive a part of the property sold,
or at the time pay some part of the purchase-money; and in
such cases, he says, at p. 499: "When the bargain is made
and is rendered binding by giving earnest, or by part pay-
ment, or part delivery, or by a compliance with the requisi-
tion of the statute of frauds, the property, and with it the risk,

attach to the purchaser; but though the seller has parted with the title, he may retain possession until payment." The fact that the number of the sheep and lambs sold was not ascertained at the time the terms of sale were agreed on did not prevent the application of the rule referred to in this case. It is true that the same learned jurist, after stating that "it is a fundamental principle, pervading everywhere the doctrine of sales of chattels, that if goods of different values be sold in bulk and not separately and for a single price, or *per aversionem*, in the language of the civilians, the sale is perfect and the risk with the buyer," adds, "but if they be sold by number, weight or measure, the sale is incomplete, and the risk continues with the seller until the specific property be separated and identified." The present case is not one of the latter class. That rule has reference to a sale, not of *specific* property clearly ascertained, but of such as is to be separated from a larger quantity, and is necessary to be identified before it is susceptible of delivery. The rule or principle does not apply where the number of the particular articles sold is to be ascertained for the sole purpose of ascertaining the total value thereof at certain specified rates or a designated fixed price. This distinction is recognized in *Crofoot* v. *Bennett* (2 Comst., 258); *Kimberley* v. *Patchin* (19 N. Y., 330); *Bradley* v. *Wheeler* (44 id., 495). The sale in question was in fact of a particular lot of sheep and lambs, and not of a certain undesignated number to be selected and delivered at a future time, and the postponement of the time for taking them away did not prevent the title passing to the plaintiffs.

A sale of a specified chattel may pass the property therein to the vendee and vest the title in him without delivery. (See Chitty on Contracts, 8th American ed., p. 332, and *Terry* v. *Wheeler*, 25 N. Y., 520.)

All the parties appear to have understood the transaction, at the time it took place, as a present absolute sale and change of title. What was said about cutting the lambs' tails off and doctoring the sheep, if they needed it, is evidence of such understanding, and there is nothing in what is said to have

been the agreement about taking them away inconsistent with it. That gave the plaintiffs the privilege of leaving them in the defendant's pasture till the time specified for taking them away, but did not deprive them of the right to take them before, if they chose so to do. The remark of the defendant at the time to the plaintiffs, that he " would give them a good chance," shows that such was its object and intention. It is proper, moreover, to consider the statement in reference to such agreement in connection with what had been previously testified to by the plaintiffs, and which was not denied by the defendant, and therefore impliedly admitted, to the effect that Groat, one of the plaintiffs, before going to look at the sheep and lambs, had stated to the defendant that he had no pasture for them, to which he replied that he had lots of pasture and would keep them for the plaintiffs if they purchased, and that they, after looking at them, had stated to him that they would take them at the price named, if the parties could agree upon the time for keeping them. Considered in that connection, it is clear that the agreement was one for the plaintiffs' accommodation and an inducement to them to make the purchase at the price asked, which had been fixed irrespective of their subsequent pasturage on the defendant's land. It affords no ground or warrant for saying that the defendant, during the time they were so kept, intended to assume and bear all the risks incident to a continuance of his ownership of them, and consequently that the purchase-money receivable by him should depend on the number that should be living at the time specified or limited for that purpose. On the contrary, the fact that the price at which they were sold, was that named by him when the first application to him to sell them was made, without reference to the question of the future keeping of them in his pasture, and the other circumstances attendant on the transaction, as stated by him, clearly show that such was not his intention.

It follows, from what has been said, that there was no error in the ruling of the judge that the title to the sheep passed to

the plaintiffs immediately upon the completion of the contract and the payment of the twenty-five dollars by them. That necessarily carried with it the right to the wool on them, it being shown that there was no reservation thereof or anything said about it during the negotiation or at the time the contract was made. It is not a mere presumption, as stated in the prevailing opinion in the Supreme Court, that the parties "intended, in the absence of evidence to the contrary, that the title to the wool should follow the title to the sheep." As was well said by Justice INGALLS in his dissenting opinion : "When the sheep were sold the wool was grown and was a part of the sheep, adding to their value," and there is no reason or principle for saying that such particular part did not pass to the purchaser with the rest of the animals. The sale was of the *entire* animal and not of different parts or portions constituting it, or of what it was formed.

Assuming, then, that the legal effect of the agreement of the parties, as testified to by the defendant himself, was to vest the title to the wool in the plaintiffs, it was clearly incompetent to show a custom in Columbia county, where the transaction took place, that the wool of sheep sold, under the circumstances disclosed, does not go to the purchaser. (See *Wheeler* v. *Newbould*, 16 N. Y., 392, 401 ; *Higgins* v. *Moore*, 34 id., 417; *Bradley* v. *Wheeler*, 44 id., 495.)

There were several offers of evidence by the defendant which were rejected by the court. Among them were the following: 1st. That the plaintiff, Groat, on a previous occasion, purchased a number of sheep and lambs of the defendant under an arrangement precisely similar to the present, and that he did not claim the wool; 2d. That the plaintiffs admitted to a witness, on being offered $100 for their bargain with the defendant and to take the sheep and lambs off their hands, allowing the defendant to have the wool, refused the offer and said that the sheep, without the wool, were worth more money than the offer; and 3d. That the plaintiff, Groat, admitted that he did not understand he had bought the wool

in question, or think of making any claim to it until his co-plaintiff suggested that they could hold it.

These were properly excluded. It was immaterial to the present controversy what the plaintiffs, or either of them, had claimed of the defendant under a previous sale. Their legal rights could not be controlled under the present contract by a failure to demand what they were entitled to under a previous one, and it cannot be held that the wool, under this agreement, was excepted from the operation of the sale, because one of the plaintiffs did not assert his rights under another, and it could not aid in determining what the contract in dispute was, whether or not the purchase of the sheep was so profitable as to cause the plaintiffs to reject the offer made them for their bargain. Nor could the understanding of one of the plaintiffs, as to the question whether he had bought the wool or not, alter the effect of the transaction or the contract actually entered into. What he in fact did buy was the question, and that did not depend on what he understood, but on the agreement. The defendant was also asked what was the value of the sheep without the wool under the arrangement he had testified to. That question was properly excluded; the inquiry was wholly irrelevant. The parties could make such agreement as they saw fit, and it was immaterial whether the defendant sold the property in question for more or less than it was worth, in the absence of any fraud or other evidence affecting its validity.

There was a request to charge the jury that if the statement of the defendant was correct, then the sum of twenty-five dollars paid by the plaintiffs was merely paid to bind the bargain and take the contract out of the statute of frauds, and that the title to the sheep did not thereby pass absolutely to the plaintiffs. This was refused, and what has already been said as to the legal effect of that statement, shows that such refusal was correct.

The court was then asked by the defendant to submit the following questions to the jury:

1st. Whether the contract in suit was executed or executory; whether it was the intention of the parties that the title to the sheep should pass to the plaintiffs immediately upon the making of the contract or at some future period.

2d. Whether the defendant, upon the making of this contract, intended to sell or the plaintiffs to buy the wool in question in this suit; and on his refusal so to do, and after proper exceptions were taken, he was requested to charge the jury that if the contract was executory and it was not the intention to pass the title to the sheep until delivery and payment, then the wool sheared from the sheep, before they were actually delivered and paid for, belonged to the defendant. This was also refused and an exception was taken to such refusal.

There was no error to submit those questions or give that instruction to the jury. They all involved the submission of matters of law to their consideration and determination. The court had previously decided that the terms, nature and effect of the contract should be determined and controlled by the defendant's statement, or version of it, which was the most favorable view in which it could be considered for him. The case was thus substantially one in which there was no dispute of facts as to the terms of the agreement, and it therefore became a question of law to be determined by the court whether the contract was executed or executory, and what was the intention of the parties (to be ascertained from the contract) as to the nature, extent and effect of the sale.

The only remaining question to be considered relates to the rule of damages laid down by the court, which he stated to be " the highest market price of wool between the time of the demand and the time of trial, with interest from the time of the demand."

It may be questionable whether the instruction as to the right to recover interest is correct; and I understand, from the points of the counsel of the defendant, that he only makes objection on this appeal to that portion of the charge. That question was not presented by his exception, which was to

the entire instruction and not to the allowance of interest only. The part allowing a recovery for the highest market value between the conversion and the time of trial, was held by us in *Lobdell* v. *Stowell* (decided at the September term, 1862,* to be the proper rule or measure of damages or compensation, on the authority of *Romaine* v. *Van Allen* (26 N. Y., 309); *Burt* v. *Dutcher* (34 id., 493); *Markham* v. *Jaudon* (42 id., 235). There was, therefore, no ground of complaint to that portion of the charge. The exception being to that as well as to the portion relating to the interest was too broad and consequently not well taken, and is not available as a ground for setting aside the verdict in favor of the plaintiffs and granting a new trial.

The result of the views above expressed is, that the order of the General Term granting such new trial should be reversed, and judgment must be ordered against defendant on the verdict with costs.

All concur.

Order reversed and judgment accordingly.