# DECISIONS

—— OF THE ——

# SUPREME COURT OF FLORIDA.

## JUNE TERM, A. D. 1891.

ERNEST M. POST, APPELLANT, VS. DANIEL B. BIRD, APPELLEE.

1. A process emanating from a court of competent jurisdiction and not void upon its face should be executed by the officer to whom it is properly directed, according to its commands, and it does not comport with his duty as an executive officer to pass judgment upon the validity of such process and execute it or not as he may judge best.

2. A writ of attachment emanating from a court of competent jurisdiction, returnable on the day of its issuance, or to the next term of the court, instead of the next rule day, is not void, and the officer to whom it is directed will be protected in executing it according to its exigency.

3. A general exception to the charge of the court to the jury will not be sustained if the charge contain a single correct proposition of law applicable to the case.

4. Where the exception to a portion of the charge is, that the court failed to give an additional or qualifying clause, if the portion of the charge excepted to is good so far as it goes, the only way the party excepting can avail himself of such an excep-

tion is by requesting the court to give the additional or qualifying clause, and if it be refused to except to the ruling of the court.

5. A charge to the jury which does not submit for their consideration any facts which they may not consider as proven by the testimony introduced in the case, is not erroneous as assuming facts not proven.

6. Property claimed to be fraudulently conveyed as to creditors may be seized on proper proceedings instituted by them for that purpose, and such seizure may be defended by showing that the conveyance is fraudulent as to creditors, and in such case the title to the property does not pass to the fraudulent grantee as against said creditors, and said property may be subjected to the payment of their demands. But the case is different whenever the conveyed property has been sold by the grantee and its identity gone. The proceeds arising from such sale cannot be levied upon as the property of the fraudulent debtor.

7. The constitutional exemption of one thousand dollars worth of personal property enures to the head of a family residing in this state, and before a party can avail himself of such exemption, he must show that he is in a condition to claim the exemption.

Appeal from the Circuit Court for Jefferson county.

The facts of the case are stated in the opinion.

*T. L. Clark* for Appellant.

*S. Pasco* for Appellee.

MABRY, J. :

The action here is trespass instituted in the Jefferson

Circuit Court by appellant against appellee for an alleged forcible entry into a certain building and the taking and conversion of certain personal property. There are two counts in the declaration. In the first it is alleged that Post, plaintiff in the Circuit Court, on the 18th day of June, A. D. 1887, was in the peace-able and lawful possession of a certain brick store-house situated in the town of Monticello, Jefferson county, Florida, and being so possessed thereof, Daniel B. Bird, defendant in said suit, on said day, unlawfully, wrongfully and with force and arms entered said store-house and seized and took from the possession of said plaintiff his money, goods and chattels, wares and merchandise, then and there being in said store-house, of the value of six hundred and fifty dollars, and then and there turned said plaintiff out of said store-house and locked the door against him, and other wrongs to said plaintiff then and there did, to his damage thirteen hundred dollars.

The second count alleges that said plaintiff on the 18th day of June, A. D. 1887, owned and was lawfully possessed of certain money, goods and chattels, wares and merchandise of the value of six hundred and fifty dollars, then and there being in a certain brick store-house situated in the town of Monticello, Jefferson county, Florida, and that said defendant, Daniel B. Bird, then and there unlawfully, wrongfully and with force and arms entered said store-house and seized and took from the possession of said plaintiff said goods, to-wit : Seventy dollars, lawful and current money of

the United States, and certain goods, wares and merchandise mentioned, of the value of six hundred and fifty dollars, and that. said defendant converted them to his own use, or wrongfully deprived said plaintiff of the use and possession thereof, and said defendant well knowing that said money and personal property belonged to plaintiff, has not as yet delivered the same, or any part thereof, to him, but has failed and wholly refused so to do, to his damage  thirteen hundred dollars.

The defendant, Bird, filed four pleas.   The first was the general issue ; second, that the premises and property in the declaration mentioned were not at the time of the alleged trespass the property of the plaintiff, nor were they in his possession as alleged,  and this he is ready to verify ; third, that he has not, as alleged in the plaintiff's declaration, converted to his own use the money, goods and property therein mentioned, nor has he wrongfully deprived the plaintiff of the use and possession thereof, and of this he puts himself upon the country; fourth, that the alleged entry of the brick store-house mentioned in the declaration, and the seizure of the money, goods and chattles, wares and merchandise then and there being was not a trespass upon the plaintiff as alleged, but the same was done in a lawful manner, and by virtue of certain writs of attachment issued out of this honorable court, which were placed in this defendant's hands, as sheriff of Jefferson county, which said writs were regular and lawful, and this defendant avers that the personal

property aforefaid was subject to the said writs, and he was only in the discharge of his official duty as such sheriff when he entered the said store and seized the said property as alleged, and this he is ready to verify.

No demurrer was filed to any of the pleas, but issue was taken upon all of them, and the case was tried before a jury at the Fall term, A. D. 1887, of the Circuit Court of Jefferson county, and resulted in a verdict and judgment for defendant, Bird. Upon the return of the verdict by the jury, plaintiff below moved the court to set aside the verdict and grant a new trial for the following reasons: 1. Because the verdict is contrary to the law; 2. Because the verdict is contrary to the evidence; 3. Because the verdict is contrary to both law and evidence ; 4. Because the verdict is contrary to the charge of the court ; 5. Because the court erred in not charging the jury in addition to what is contained in the first paragraph of the charge, that if the sale was *bona fide* and for a valuable consideration, the mere fact that the effect of such sale was to hinder and delay creditors in the collection of their claims, did not render the sale void as to creditors; 6. Because there was error in the second paragraph of the charge, as it tends to leave the impression on the minds of the jury that there was evidence that a part of the consideration for the sale was that Garwood was to retain possession of the goods as he had before, and was to take from the store such goods as his family might need from time to time, and was when he had

settled with his creditors to take the goods back as his own, and that the jury was misled by this portion of the charge; 7. That the court erred in refusing to charge the jury as requested by plaintiff. This motion was overruled by the court and a final judgment entered for defendant below, from which an appeal is prosecuted to this court.

The errors assigned by appellant are: 1st, that the court erred in admitting in evidence the writs of attachment against Garwood; 2nd, that the court erred in the charge given to the jury, and in refusing to charge the jury as requested by appellant; 3rd, that the court erred in charging the jury, in effect, that before they could find for appellant they must believe that Garwood in making the sale to Post had no design to hinder or delay other creditors in the collection of their claims against him; 4th, that the second paragraph of the charge as given is erroneous, as it assumes and was based upon a state of facts not proven, and the jury was misled by it; 5th, that the court erred in refusing to charge the jury as requested by appellant, viz: (1), That the proceeds of sales made by Post after he purchased from Garwood were not subject to seizure under attachments against Garwood; (2), that property exempt from forced sale under the constitution and laws of the state of Florida is not susceptible of fraudulent alienation as against creditors; 6th, that the court erred in refusing to grant a new trial on the grounds set forth in appellant's motion.

The first error assigned is based upon the ruling of

the trial judge admitting in evidence, over the objection of appellant, the writs of attachment issued in certain suits instituted against one C. J. Garwood.

From the evidence certified to us by the bill of exceptions, it appears that the appellant, Post, claimed the personal property in question by purchase from Garwood, made on the 17th day of June, A. D. 1887. Appellee contends under his second plea that Post did not own the property and was not in possession of it when he levied certain writs of attachment on it, and under the fourth plea he further contends that if Garwood made a sale of said property to Post it was fraudulent and void as to the creditors of Garwood. Appellee seeks to justify the taking of said property under his fourth plea by virtue of certain writs of attachment issued from the Circuit Court for Jefferson county, and that said property was liable to be seized under said writs. It appears from the record that three writs of attachment in the suits of Gustave, Eckstein & Co. against C. J. Garwood, Meinhard Bros. & Co. against C. J. Garwood, and Frank & Co. against C. J. Garwood, were issued by the Clerk of the Circuit Court in and for Jefferson county, on the 18th day of June, A. D. 1887, directed to the sheriff of said county, commanding him to attach and take into his custody so much of the lands and tenements, goods and chattels of Charles J. Garwood as will be sufficient to satisfy the demands of said plaintiffs mentioned in said writs. The writ of attachment issued in the suit of Eckstein & Co. against Garwood was made returnable before the Judge of said

Circuit Court on the 18th day of June, A. D. 1887, next, and the writs in the other two cases were made returnable before the said Judge on the first day of the Fall term, 1887, of the Circuit Court for said county. The Fall term was in November, 1887. All of these writs went into the hands of appellee, as sheriff of Jefferson county, Florida, on the 18th day of June, A. D. 1887, the day of their issuance, and as appears by his return endorsed thereon, were levied on the property in question the same day. It also appears from a further endorsement on the writ issued in the case of Frank & Co. against Garwood, that appellee, as sheriff, retained the property attached until a writ of *fi. fa.* issued on a judgment rendered in said cause was placed in his hands, and that he then held the said property by virtue of the said writ of *fi. fa.* The latter writ went into his hands as sheriff on the 26th day of September, A. D. 1887.

The record further discloses the fact that Garwood, defendant in the attachment suits, by attorney, made a motion on the 18th day of June, 1887, before the Judge of said Circuit, at chambers, to dissolve the attachments issued in said suits. The grounds of the motion to dissolve were, that the causes assigned for issuing the attachments were untrue, and which were traversed by affidavits, that the recitals in the attachment bonds did not correspond with the writs, and that said writs were not returnable as required by law. A jury was called for the issue made by the traverse, the trial on which was postponed, and the other grounds of the motion to

dissolve the attachments were overruled by the court. At the time this motion was heard, to-wit: the 18th day of June, A. D, 1887, plaintiffs in the attachment suits, by attorney, moved the court to amend the said writs of attachment by making them returnable to the next rule day after their issuance, but it does not ap pear from the record what disposition was ever made of this motion. It does appear that judgments were subsequently entered in said suits against Garwood. The objection to the introduction of these writs in evidence is that they were not made returnable as required by statute and the rules of practice.

The objection here presented does not involve the same point that was considered by this court in the case of Dowling v. Bowden, 25 Fla., 712, 6 South. Rep., 765. In that case the sheriff attempted to justify the taking of personal property by virtue of a writ of attachment, but it appeared that he failed to return the writ on the rule day to which it was made returnable, or to show any excuse for not doing so. The objection was not to the form or sufficiency of the writ, but to the conduct of the officer in returning it. Here there is no contention that the officer did not execute and return the writs according to their exigency, but it is insisted that the writs not being made returnable to the next rule day after their issuance, can afford no protection to the officer who executed them, though in obedience to their command. The writs in question were based upon affidavits and bonds, and emanated from a court of competent jurisdiction, and were made

returnable to the court from which they issued, although not to the rule day prescribed by statute. The record shows that defendant in the attachment suits made a motion to dissolve the attachments because the writs were not made returnable properly and that this motion was overruled ; and further, that a motion was made to amend the writs in this respect, and although we are not informed of what disposition was made of this motion, it does appear that judgments were subsequently entered in said suits against defendant. As between Garwood, the attachment debtor, and the attaching creditors, the writs were not absolutely void, and were susceptible of amendment. Waple on Attachment and Garnishment, p. 141 ; Bray v. Bray, 30 Mich., 479 ; Wight v. Hale, 2 Cush., 486 ; Wright. v. Moran. 43 N. J. (Law), 49. From the record before us we would be justified in concluding that the court made all amendments and corrections necessary to the exercise of its jurisdiction. But however this may be, it is settled by authority that where process is good upon its face and emanates from a court of competent jurisdiction, the officer who executes it according to its exigency, will be protected under it. Waples on Attachment, &c., p. 144, sec. 4 ; Bogert v. Phelps, 14 Wis., 88 ; Grace v. Mitchell, 31 Wis., 533 ; Olmsted v. Hoyt, 4 Day, 436 ; Parker v. Walrod, 16 Wend., 514 ; Cody v. Quinn, 6 Iredell, 191 ; Luddington v. Peck, 2 Conn., 700 ; Churchill v. Churchill, 12 Vt., 661. The writs in question, emanating from a court of competent jurisdiction, and not being void upon their face, it was the

duty of the sheriff to execute them according to their commands. It does not comport with law or correct policy to permit an executive officer to pass judgment upon a proceeding of a court of competent jurisdiction whose procees he is required to execute and obey it or not, as he may judge best. Taylor v. Alexander, 6 Ohio, 144 ; Parsons v. Loyd, 3 Wilson, 341. The objection interposed here comes in the way of a collateral attack upon the attachment proceedings against Garwood, and whatever is susceptible of amendment should, on such an attack, have the same effect as if amended. Any other rule would permit judgments of courts of competent jurisdiction to be disturbed by collateral assaults for defects and irregularities that might have been cured by amendment if the objections had been made in time. We think the court did not err in permitting the writs to be introduced in evidence in connection with evidence tending to show that the property levied on was liable to the writs.

The second assignment of error is, that the court erred in the charge given to the jury, and in refusing to charge the jury as requested by appellant. We will consider the refusal of the court to give charges requested by appellant under the fifth assignment of error. The only charge given by the court to the jury is as follows : "If you believe from the evidence that the sale from Gorwood to Post was honestly made, and that there was no design to defraud his creditors or to delay or hinder them in the collection of their claims against him, then your verdict should be for

the plaintiff for a sum equal to the value of any goods which the evidence shows the defendant took from the plaintiff; but if you believe from the evidence that Garwood was insolvent, and sold his whole stock of goods to Post for a certain price, and that a part of the condition was, that Garwood was to remain in possession as agent or clerk, and was to continue to sell the goods as he had been doing before, and was to take from the stock of goods such as his family might need from time to time, charging them to himself, and was, when he had settled with his creditors, to take the goods back as his own, then the law, however honest the intention of the parties may have been, considers said sale as against law and public policy, and absolutely null and void, and you must find for the defendant. The jury are the exclusive judges as to the evidence, and its weight and credibility." This exception of appellant cannot be sustained. There was a general acception to the entire charge of the court, and it is well settled in this court that such an exception cannot be sustained if the charge contains a single correct proposition of law applicable to the facts of the case. Metzger v. State, 18 Fla., 481; Baker v. Chatfield, 23 Fla., 540; Pinson v. State, decided at the present term of this court. An examination of the entire charge given above shows that it does contain a correct proposition of law, and hence this exception must fail.

The third assignment of error is, that the court erred in charging the jury, in effect, that before they

could find for appellant they must believe that Gar-
wood, in making the sale to Post, had no design to
hinder or delay other creditors in the collection of
their claims against him. The exception to the charge
as presented in this assignment of error was not taken
at the time the charge was given or in the motion for
a new trial. In the motion tor a new trial one of the
grounds alleged is, "that the court erred in not charg-
ing the jury in addition to what is contained in the
first paragraph of the charge, that if the sale was
*bona fide* and for a valuable consideration, the mere
fact that the effect of such sale was to hinder or delay
creditors in the collection of their claims, did not ren-
der the sale void as to creditors." The court was not
requested to give the additional matter, the omission
to give which, is alleged as error in the motion. The
only way appellant can be heard in this court on the
assignment of error now made, is by construing it as
an exception to the paragraph of the charge as being
erroneous without the additional or qualifying clause
embodied in the motion for a new trial. In the first
paragraph of the charge the court instructed the jury
that if they believed from the evidence that the sale
from Garwood to Post was honestly made, and there
was no design to defraud his creditors, or delay or
hinder them in the collection of their claims against
them, their verdict should be for the plaintiff, &c.
The exception taken to this paragraph of the charge in
the motion for new trial is, that the court erred in not
giving the additional clause set out in the motion. If

what was given is correct, this exception must fail because the only error alleged is, that this portion of the charge is error without the, qualifying language mentioned. If the sale was entered into by Garwood and Post for the purpose of defrauding, hindering or delaying the former's creditors, it would be void as to them. The portion of the charge under consideration directs the jury that if they believe from the evidence that the sale was honestly made, and there was no design to defraud, hinder or delay the creditors of Garwood, the verdict must be for plaintiff. While the additional clause, "that if the sale was made *bona fide* and for a valuable consideration, the mere fact that the effect of such sale was to hinder or delay creditors in the collection of their claims, would not render the sale void," might properly have been given by the court, yet we are unable to see that its absence renders what was given erroneous. If appellant desiring to have the qualifying matter given to the jury along with what the court did charge, he should have requested the court to give it, and upon its refusal, have taken an exception to the ruling of the court.

The fourth assignment of error is, that the second paragraph of the charge as given is erroneous, as it assumed and was based upon a state of facts not proven, and the jury was misled by it. It must be conceded that the trial judge has no right to assume, in his charge to the jury, a state of facts not proven, and present the same for their consideration. The correct-

ness of the paragraph of the charge in question must, therefore, depend upon the evidence introduced in the case. This paragraph is as follows: "If the jury believe from the evidence that Garwood was insolvent and sold his whole stock of goods to Post for a certain price, and that a part of the consideration was, that Garwood was to remain in possession as agent or clerk, and was to continue to sell the goods as he had been doing before, and was to take from the stock of goods such as his family might need from time to time, charging them to himself, and was, when he had settled with his creditors, to take the goods back as his own, then the law, however honest the intention of the parties may have been, considers such sale as against law and public policy, and absolutely null and void." The testimony of the witnesses as to the value of the goods claimed to have been purchased by Post from Garwood varied from seven hundred and fifty dollars to fifteen hundred dollars, and Mr. Garwood says in his testimony that he owned not exceeding $300 worth of personal property above what he sold to Post, and at that time he owed about thirty-three hundred dollars. There is no question but that the alleged sale was for the entire stock of goods, wares and merchandise owned by Garwood at the time of said sale. Garwood further testified that he was advised that he had the right to sell the stock of goods at the time he made the sale to Post. He says: "I sold them in order that I might be in a position to pay my other creditors. I was at the time fearful that my creditors would close

me up. My understanding with Mr. Post at the time I made the sale to him was that I was to be employed by him to carry on the business for him, and he was to furnish more goods as they were needed. We made no agreement as to how I was to be paid, whether I was to have a salary or an interest. My object was to keep my creditors from breaking me up. I was expecting other creditors to be on the way, and we hurried up matters. I think the understanding was that I could get the business back when I got on my feet again. I was to be allowed to take out of the stock of goods as I needed for my family, just as I do now in my present business, and charge myself with them." He further stated : "I am now carrying on a mercantile business as agent for J. T. Budd. I have no interest in the business. After I sold out to Mr. Post I expected to carry on the business for him in the same way. Appellant Post says that up to the time of the seizure of the goods under attachment, he had made no contract for the hire of clerks, and had made no definite arrangement with Mr. Garwood. He does not contradict what Mr. Garwood says about the sale. The charge as applied to the evidence in the case did not, in our opinion, submit for the consideration of the jury any facts which they might not have considered as proven by the testimony before them, and the paragraph of the charge in question is not amenable to the objection made.

The fifth assignment of error is, that the court refused to give charges requested by appellant. The

first charge requested by appellant to be given, and refused by the court, is, that "if you find that goods were sold by Post after he purchased from Garwood, and that the proceeds of such sale have been seized by defendant under the attachments, you will find a verdict for the amount of such proceeds in any event, as such proceeds are not liable to the attachments. The declaration alleges that defendant seized and took from the possession of plaintiff seventy dollars, current money of the United States, as well as other personal property therein described. Garwood says: "Mr. Post was in the store when the Sheriff levied the attachment. The Sheriff took from the drawer $67 in cash, which was the proceeds of goods sold on Saturday." The alleged sale to Post was on Friday. Post says in his testimony that the defendant levied the writ of attachment about half-past three or four o'clock, on June 18th, 1887, which was Saturday, and ordered the store closed and all sales stopped. He then had Mr. Garwood and myself to deliver to him the money for the sales made that day. He demanded this money and it was delivered to him. I think there was about $50, but do not recollect the exact amount. I had a memorandum of the amount, but have lost it. The appellee admits that he got from the drawer in the store where the goods were found, from $57 to $60, and took possession of it under the writs. Appellant's position in reference to the money is, that conceding the sale from Garwood to Post to be fraudulent as to the former's creditors, it is good until set aside by proper

legal proceedings, and that the money and proceeds received by Post for goods sold before the levy of the attachments were not liable to seizure under said writs in an action at law. Conceding that there was a completed sale from Garwood to Post before the money was received for the goods on Saturday, and before the levy of the attachments, we think the position of appellant is correct. This point was directly decided in the case of Lawrence vs. Bank of the Republic, 35 N. Y., 320. It was said in this case that the Sheriff may doubtless attach any property which was transferred by the fraudulent assignment, and hold it subject to the decision of the court upon the question of fraud. But in such a case he must defend the seizure in behalf of the creditors, and show that the assignment was fraudulent as to the plaintiff's debt. As to creditors, the title to such property does not pass if the assignment is fraudulent, but is liable to seizure to satisfy the plaintiff's debts. The case is, however, different when the assigned property has been sold by the assignee and its identity gone. The proceeds cannot be attached or levied upon by the sheriff as the debtor's property. Setting aside the assignment simply would not vest the title to such proceeds in the debtor. The rule announced in this case has been approved in the text of Bump on Fraudulent Conveyances, page 469, and by Wait, in his book on Fraudulent Conveyances and Creditors' Bills, page 191, sec. 120. In this authority it is said, the only remedy of the creditor in such a case is to institute a creditor's

suit, and fasten a trust upon such proceeds for the benefit of creditors, which necessarily confirms the legal title of the assignee to the assigned property, instead of annulling it, as would be the case if the sheriff had seized the assigned property instead of the proceeds. The same view is taken in the case of Campbell v. Erie R. R. Co., 46 Barb., 540; Thurber v. Blanck, 50 N. Y., 80; Tubbs v. Williams, 7 Humph., 367, and Richards v. Ewing, 11 Humph., 327. A different view has been taken in some decisions, but the rule above announced, we think, is sound. The statute against fraudulent alienations operates upon the property fraudulently conveyed, and notwithstanding the words "utterly void," applied to such conveyances, they are not, even as to creditors, void, but voidable. Wait on Fraudulent Conveyances and Creditors' Bills, sec. 19; Andrews v. Marshall, 43 Maine, 272. In the case of Neal v. Gregory, 19 Fla., 356, it is said, a *bona fide* purchaser for value, without notice from a fraudulent grantee, gets a good title. As against the debtor the deed is effectual and the fraudulent grantee has a title and right to alienate. The only infirmity in his title is its liability to be impeached by creditors. As to all others it is perfect, and when it has passed into the hands of a *bona fide* purchaser for value, even this infirmity is cured, and the title becomes sound and indefeasible. On the assumption that Garwood sold to Post, even if the sale was believed by the jury to be fraudulent as to the former's creditors, the court erred in refusing to give the charge requested in reference

to the money arising from the sale of goods before the attachments were levied. But appellee further contends that under his second plea the ownership of appellant in the property in question was put in issue, and the jury returned a general verdict for defendant, and that appellant is concluded thereby if the evidence sustains a finding under this plea. This contention involves a consideration of the case in reference to the sale as between Garwood and Post. Appellee says that the sale was not complete as between these parties at the time of the levy of the attachments. It is apparent from an examination of the charge given to the jury that the court did not submit to them this phase of the case. The instruction of the court to the jury directs them that if they believe from the evidence that the sale from Garwood to Post was honestly made, and there was no design to defraud, or hinder or delay Garwood's creditors, they must find for plaintiff. No instruction was asked by appellee as to what was requisite to constitute a complete sale as between the parties, and from the record it appears that the question submitted to the jury was whether the sale was fraudulent or not. From the evidence in the record before us we think there was no escaping the conclusion that as between Garwood and Post there was a complete sale and transfer of the property. Post testified that he owned and was in possession of a stock of goods in the store formerly occupied by Garwood, in Monticello, at the time the sheriff levied on them, and that he had been in possession of the same about

twenty-four hours at the time of the levy of the attach-
ments. On cross-examination he says that he bought
the stock of goods from Garwood and paid him $650
for it; that Garwood owed R. B. Post & Son, whom
he, Post, represented, but in whose business he had no
interest other than as salesman, the sum of $497, and
that he receipted Garwood for this amount and gave
him a draft on Post & Son for $153, the difference be-
tween the account and the purchase price. After the
attachments were levied Garwood gave him back the
draft to keep for him, as the safe had been taken by
the sheriff, and that he kept it a week or ten days,
when Garwood asked him about it. He says that he
told Garwood that as the property was attached, and
his title was in danger, the draft ought to remain with
some one until the court confirmed the title, and that
with this understanding the draft was left with a third
party. He further says that after the sale was made
they took an inventory of the stock of goods to see if
he had paid value for it; and if not he was to pay for
the benefit of Garwood's creditors any balance that
might be due upon a valuation made by competent
parties; that the inventory of the stock amounted to
$1,100 at prices Garwood gave for the goods, allowing
nothing for depreciation. He also introduced a bill of
sale, properly executed, from Garwood and wife, con-
veying to himself, for the expressed consideration of
$650, the entire stock of goods, wares and merchandise
of every kind and description contained in a certain
brick store situated in the town of Monticello, then

and lately occupied by C. J. Garwood. This bill of sale, by its terms, conveys all right, title and interest of C. J. Garwood in and to said stock of goods, bears date the 17th day of June, 1887, is duly acknowledged and properly recorded in the office of the Clerk of the Circuit Court of Jefferson county on the same date. Post further says that he took the bill of sale for the goods and immediately went into possession of them under it and held them until the sheriff levied on them. C. J. Garwood was introduced as a witness by appellee, and testified that he sold out his stock to the plaintiff, E. M. Post. He says $650 was the nominal value placed on the same, any balance was to be paid by Post, and if they could not agree on the value, they were to submit the question to competent merchants, and were to settle by what they fixed as the cash value of the goods. He corroberates Post as to how the goods were to be paid for, but says that when the goods were attached he gave the draft back to Post. He says: "I could not say whether he asked me for it, or whether I handed it back to him voluntarily. I do not consider it was a finished sale. The draft which Mr. Post gave me in part payment for the goods has never been returned to me. It was afterwards left with Mr. Post's attorney. * * * I made a demand on him for it, but he refused to deliver it to me." This witness further says that an inventory of the goods was taken by Post and himself after the bill of sale was executed; that Mr. Clark, Mr. Post and himself were together when the bill of sale was executed. "My object in making

the sale to Mr. Post was not to defraud my creditors, but to pay them. I expected to get the full cash value of the goods, and expected to get about $450 after inventory was footed up, and after the payment of the draft," etc. "The sale was made on Friday evening; Mr. Post and I went to the store and I turned over everything to him; we took inventory that evening and night, but it was not completed and footed up. I asked Mr. Post what I should do the next day, and he said we would open the store and sell goods on Saturday with the same clerks that had been previously employed. The business was then Mr. Post's, as everything had been delivered to him on Friday. Mr. Post was in the store when the sheriff levied the attachments." Post and Garwood were the only witnesses who testified as to the sale. We entertain no doubt that as between Garwood and Post the sale was complete, and the title passed to Post. Counsel for appellee invokes the principle that so long as anything remains to be done as between the seller and purchaser for the purpose of ascertaining the price of the article which is the subject-matter of the contract, the right of property does not pass. Story on Sales, sec. 220, 220 b. The bill of sale introduced in evidence conveys the title to the goods in question to Post for the consideration of $650, and the possession of the same was given to him by Garwood under this bill of sale. Conceding that there was an understanding between them at the time, that if the goods, delivered under the bill of sale, should be ascertained by inventory to be of

greater value than the price then fixed, that Post should pay an additional sum to make up a fair valuation, this would not make the sale incomplete. Benjamin, in his work on sales, lays down the rule that if goods sold are clearly identified, then, although it may be necessary to number, weigh or measure them, in order to ascertain what would be the price of the whole at a rate agreed upon, the title will pass. As an illustration: if a flock of sheep is sold at so much a head, and it is agreed that they shall be counted after the sale, in order to determine the entire price of the whole, the sale is valid and complete. 1 Benjamin on Sales, sec. 394; see also same author, secs. 395, 396, and authorities cited; Groat v. Gile, 51 N. Y., 431. The intention of the parties, as expressed in the bill of sale and the other testimony, is manifest that Post was to acquire thereby immediately the title to the property, and the legal effect of what they did, as between them, was to put the title in him.

The second charge requested by appellant, and refused by the court, is as follows: " The head of a family is entitled under the constitution and laws of Florida to an exemption of personal property to the value of one thousand dollars from forced sale under any process of law, and such property is not susceptible of fraudulent alienation. If you found that Garwood had less than one thousand dollars worth of personal property left him after the sale to Post, then you may find for plaintiff an amount sufficient to make $1,000 when added to the value of the personal prop-

erty retained by Garwood, even if you should be of opinion that the sale of property not so exempt was fraudulent and void as to creditors." We think the court did not err in refusing to give this charge. It is true that our constitution exempts one thousand dollars' worth of personal property from forced sale, and it may be true that the property exempt is not susceptible of a fraudulent alienation so far as creditors are concerned; (sec. 1, Art. X, Constitution of 1885; Ballard v. Eckman & Vetsburg, 20 Fla., 661;) but before a party can avail himself of the exemption provided in the constitution, he must show that he is in a condition to claim the exemption. The constitution provides that the head of a family residing in this State shall be entitled to the exemption. Garwood says that before he sold out to Post he was doing business in the name of J. E. Garwood, in Monticello, Jefferson county, Florida, and the bill of sale introduced in evidence is executed by C. J. Garwood and his wife, Julia E. Garwood, of Jefferson county, Florida. This is not a sufficient showing that Garwood was, at the time of the sale, the head of a family residing in the State of Florida, and that he was then in a condition to claim the exemption provided in the constitution. In addition to this, the charge asserts that the head of a family is entitled to the exemption, whereas, the constitution provides that the head of a family *residing in this State* shall be entitled to the exemption.

For the error committed by the court in refusing to give the first instruction asked by appellant, the judgment is reversed and a new trial awarded.