GEORGE W. GROVES, Appellant, *v.* GUY S. WARREN, Respondent.

**Sale — what constitutes completed sale of goods without actual payment therefor or delivery thereof — purchase of goods for resale at auction — conversion of goods by vendor before completion of resale thereof.**

1. When the terms of a sale are agreed on and the bargain is struck and everything that the seller is to do with the goods is complete, the contract of sale becomes absolute as between the parties without actual payment or the delivery of the property.

2. Where, after considerable correspondence between the parties, plaintiff and defendant entered into a contract whereby plaintiff agreed to purchase from defendant his stock of merchandise at cost from manufacturers or jobbers, less thirty per cent of such inventory, or cost price, such goods to be resold by plaintiff at auction in the store of defendant, who was to receive the cash proceeds of the sale, less certain expenses, until he received the amount due him; and, pursuant to such agreement, sales were advertised and conducted by plaintiff until defendant had received the amount due him, except a small amount, leaving goods unsold of considerable value, and thereupon defendant over the protest of plaintiff and his agents removed the unsold goods from the store and disposed of them, defendant's action amounted to a conversion of the unsold goods, and it was error for the trial court to dismiss the complaint at the close of plaintiff's case. There was evidence of a completed sale. The acts and admissions of

the defendant showing that he understood that his goods had been sold to plaintiff, are inconsistent with his claim that no title was to pass until the sales amounted to the purchase price.

Groves v. Warren, 178 App. Div. 333, reversed.

(Argued May 27, 1919; decided June 6, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 10, 1917, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Martin S. Lynch* and *F. W. Clifford* for appellant. The title to the goods was in the plaintiff at the time of their removal from the store by the defendant. (*Groat v. Gile*, 51 N. Y. 431; *Olyphant v. Bager*, 5 Den. 379; *Terry v. Wheeler*, 25 N. Y. 520; *Russell v. Carrington*, 42 N. Y. 118.) If it cannot be said as a matter of law that the title to the goods was in the plaintiff, then such question of title should have been submitted to the jury. (*Bissell v. Balcom*, 39 N. Y. 275; *Bradley v. Wheeler*, 44 N. Y. 495; *Burroughs v. Whitaker*, 71 N. Y. 291; *Hatch v. Standard Oil Co.*, 100 U. S. 124.) The removal of the stock of goods from the store by the defendant constituted conversion. (*Industrial & General Trust v. Tod*, 170 N. Y. 233; *Boyce v. Brockway*, 31 N. Y. 490; *Hynes v. Patterson*, 95 N. Y. 1; *Laverty v. Snethen*, 68 N. Y. 522; *Pease v. Smith*, 61 N. Y. 777; *Mahoney v. Walsh*, 16 App. Div. 601.)

*Frederick E. Hawkes* for respondent. Assuming that plaintiff suffered damage by Warren's act, his remedy was an action for breach of contract, not one for conversion. (*Dwight v. Germania Life Ins. Co.*, 103 N. Y. 341; *Gillet v. Bank of America*, 160 N. Y. 549; *Strong v. Taylor*, 2 Hill, 326; *Russell v. Nicoll*, 3 Wend. 111; *Thompson v. Leslie*, 39 N. Y. S. R. 47; *First Nat. Bank v. Peck*,

61 App. Div. 258; *Anderson* v. *Read,* 106 N. Y. 333; *Empire S. T. F. Co.* v. *Grant,* 114 N. Y. 40; *Adams* v. *Roscoe Lumber Co.,* 159 N. Y. 176; *Fennikoh* v. *Gunn,* 59 App. Div. 132; *Wixom* v. *Ervay,* 150 App. Div. 26.) There was no question of fact for the jury. (*Wright* v. *Bank of the Metropolis,* 110 N. Y. 237; *Electric Fire Proofing Co.* v. *Smith,* 113 App. Div. 615.)

CRANE, J. This case was brought to recover the value of property consisting of boots and shoes taken from the possession of the plaintiff and converted by the defendant to his own use.

The plaintiff was a resident of the city of Buffalo where he was trading under the firm name and style of G. W. Groves & Co. The defendant had a shoe store at 304 Broad street in the village of Waverly, Tioga county, New York.

These parties entered into a business transaction by which the plaintiff claims that he purchased all of the defendant's stock and took the same into his own possession. The defendant says that the transaction did not amount to a purchase and sale, that he never parted with the title or possession of his goods and that his disposition of them could not have amounted to a conversion.

At the end of the plaintiff's case the trial judge dismissed the complaint and the Appellate Division has affirmed the judgment for the defendant by a divided court.

The documentary evidence together with the testimony, in our opinion, established a completed sale and delivery of the defendant's goods to the plaintiff, or at least presented a question for the jury as to whether or not there had been such an executed sale. To present the reason for our conclusion it will be necessary to state somewhat in detail the transaction between the parties.

Groves was engaged in conducting large sales of merchandise or in buying and selling stock on speculation. Warren, who had been conducting a retail shoe store, wanted to sell out and close up. He appealed to Groves as a means to this end. On July 9th, 1915, Warren wrote to Groves: " I received letter from you some time ago stating that you bought shoe stock and put on sale now. I have between 5 and 6 thousand Dollar stock that I want to sell as I want to go out of business as I have too much other work to do  *  *  *  What do you pay for entire stock."

Groves answered the next day asking for a price on the stock. This was followed by a letter from Warren beginning: " Your letter at hand and note what you say about buying my stock." Then follows a description of the stock.

On the 20th of the month Groves writes a long letter, too long to be quoted in full, the pertinent part of which runs as follows:

" There is little need of us going to look your stock over unless you would be willing to sell the stock to us, and you can sell it to us if you will name the right price, but you will have to make a liberal sacrifice to sell it to us, as we buy stocks on speculation to make money and not with a view of continuing on with your business. If we bought your stock we would go there, start our own sale and sell the stock all out right where it is. We seldom ever move a dollar's worth of goods away."

Then follows a statement of what would be done in case Groves sold the goods on commission for Warren instead of buying his stock outright. He says:

" Our terms for conducting a sale are 10% commission on the gross sales, that is, on a small stock like yours and you to pay all expenses connected with the sale. We know that we advertise to pay one-half of the advertising expense of a sale, and we do, but we do not do

it on such a small stock as yours.  *  *  *  We are enclosing you a contract, and if you will sign same and return it to us at once, we will give you quick action."

The enclosed contract was never executed.

On August 3d, Groves again wrote to Warren a letter in which he said: " If you do not want a sale, sell us your stock, or let us get up the advertising matter for you to operate a sale."   Seven days later Warren answered as follows:

" I have received several letters from you since I wrote you about my stock.  Now I want to close out all of it as I have other business to attend to but do not want to put on sale as the expense is to much and then I would have some stock left on my hand and my stock is all good.  If you want it I will sell it out to you and then you can do as you please.  The store could be had as long as you want at the same as I pay for it and will close it out to you at $.80 ct. on the dollar and I cannot see why there could not be good margin for you as the stock is advancing all the time.  Hoping to hear from you soon as I want to get out as soon as possible.  Perhaps it might pay you to come and see my stock."

Being impatient to sell and not receiving a reply to this letter Warren again wrote on September 2d saying that he had not heard from Groves as to how much he would give him for his stock.  On the 4th Groves wrote that he would send a man to look over the stock the following week.  One or two other letters were exchanged and finally on October 26th Groves made a proposition to purchase the entire stock.  He wrote:

" Now, I have thought your proposition all over and have decided to make you one more proposition.  We will give you 70 cents on the dollar for your stock.  *  *  *  If you accept this offer we will then start a big sale of that stock and we will pay you for the stock with the money we take in for the goods we sell during the sale, that is, the goods that belong to you, and we

to pay the running expenses of the sale, which means clerk hire and advertising. If this is satisfactory to you we are ready to do business. It would seem to me that we could turn that stock into money inside of ten days. In fact, we feel we could get you the money that would be due you from the stock, inside of one week."

Then follow these very important words:

"If you do not feel like selling us your stock at our price, you may feel like employing our services to put on a sale for you with a view of turning your stock into money, and if you do you can sign the contract we sent you July 20th and we will carry it out."

Three days later Warren closed the matter in these words written under date of October 29th: "Well I will take your offer."

There can be but one conclusion from this correspondence. Groves made two propositions; one to purchase Warren's stock outright as a speculation, the other to sell Warren's stock for him on a 10% commission basis, Warren to pay all expenses. The first proposition was the one accepted.

The contract was thereupon drawn up and executed reading as follows:

"Made and entered into this 10th day of Dec. 1915, between G. W. Groves & Co., of Buffalo, N. Y. party of first part and Guy Warren, of Waverly, N. Y., party of second part, WITNESSETH: Party of first part agrees to and by this contract does purchase of party of second part, a certain stock of shoes and rubbers, etc. (not including fixtures) at inventory or cost from manufacturers or jobbers to second party, less 30% of said inventory or cost price, except a certain specified few pairs of shoes and rubbers, a list and inventory of which is attached hereto, and party of second part shall receive inventory or cost for these few pairs, being stock purchased by second party during last part of 30 days. Party of first part agrees to put on sale of above men-

tioned stock in the store of second party at 304 Broad St., and party of second part agrees to take his pay in the following manner, at the close of each day's sale, parties of first and second part shall count up and check the cash taken in during the day and party of second part shall keep such cash until he shall have received the amount due him on this contract and in·case sales of entire stock should not equal purchase price of stock, party of first part agrees to make up said difference at close of sale. Party of first part agrees to pay the clerk hire and advertising expense of conducting the sale, such expenses to start from the time the inventory is completed. Party of second part by this agrees to give his services without charge until his claims are satisfied and he shall have received all his money due him under this contract and also to give possession of store without charge until the end of sale.''

An inventory of the shoe store in Waverly was thereupon made by Groves and his employees, and sales advertised and conducted until Warren had received $3,525.23 upon·the purchase price according to the contract. The sales began on the 15th of December going somewhat slower than had been anticipated so that the stock had not been fully disposed of by February of the following year. It was conceded upon the trial that the inventory value of the stock was $5,901.33, the purchase price, therefore, being 70% of this amount, equalled $4,130.93 and the balance due the defendant, Warren, at the times herein mentioned was about $605.70. On February 28th Warren, over the protest of Groves and his representatives, removed the balance of the goods from the store and disposed of them. These were valued at about $2,600.

I fail to appreciate the defendant's position or to understand how he considered himself to have either the possession or title to these goods. The correspondence

we have read. The contract is plain and direct in terms and the acts of the parties under it speak a completed sale. The key to the store Warren delivered to Johnson, the plaintiff's employee in charge. The inventory made up was dictated by Guy S. Warren and was headed " George W. Groves, December 10th." That is, the inventory showed the property of George W. Groves. The expenses of the sales were met by Groves, the defendant merely paying rent for the store. When the defendant arranged for the leasing from month to month he told Harry W. Knapp, the agent, that he had sold out to Groves.

In our opinion here was evidence of a completed sale. Warren wanted to sell, he accepted an offer made for his stock, he turned it over to the vendee who had possession for the purpose of resale as contemplated by the parties. The larger part of the purchase price had been paid and the acts and admissions of the defendant show that he understood that his goods had been sold to Groves. We can think of nothing that the vendor was obliged to do to make delivery complete and the only thing remaining undone by the vendee was the payment of the balance of the purchase price. In fact, by the articles of agreement he had undertaken to pay the difference between his purchase price and the amount received from the auction sale should the latter not equal the purchase price which Groves had agreed to pay. This certainly is inconsistent with the claim that no title was to pass until the sales amounted to the purchase price.

The rule in all these cases is that it is the intention of the parties which must control. (*E. S. T. F. Co.* v. *Grant,* 114 N. Y. 40; *Burrows* v. *Whitaker,* 71 N. Y. 291.) It is quite evident that an executed contract of sale was the intention of both Groves and Warren. When the terms of a sale are agreed on and the bargain is struck and everything that the seller is to do with the

goods is complete, the contract of sale becomes absolute as between the parties without actual payment or the delivery of the property, and the risk of accident to the goods vests in the buyer. (*Groat* v. *Gile*, 51 N. Y. 431.)

We have, in this case, more than mere intention, we have the parties acting and speaking upon the assumption of a completed sale.

As the matter stood at the end of the plaintiff's case it was error for the court to dismiss the complaint. In our opinion, for the reasons above stated, Warren had sold his goods to Groves and was not justified in taking them back. His action amounted to a conversion of them. Only one side of this case has been heard. On a new trial evidence for the defendant may in some particular contradict or modify the record as it now stands, and we do not desire to be understood as stating that upon the correspondence and agreement a verdict should be directed for the plaintiff. It may be that the intention of the parties will become a question of fact and that the jury must pass upon it. All we hold at this time is that on the record as it now comes before us, the complaint should not have been dismissed, but at least the question whether or not the parties intended a completed sale should have been submitted to the jury.

The judgment should be reversed, and a new trial ordered, costs to abide the event.

HISCOCK, Ch. J., CUDDEBACK and HOGAN, JJ., concur; CHASE, COLLIN and MCLAUGHLIN, JJ.; dissent.

Judgment accordingly.